```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                        -  -  -
 3    IN RE:                      :  MDL DOCKET NO.
      DePUY ORTHOPEDICS, INC      :  1:10 md 2197
 4    ASR HIP IMPLANT PRODUCTS     :
 5    -----------------------------------------------------
 6              SUPERIOR COURT OF NEW JERSEY
                LAW DIVISION - BERGEN COUNTY
 7

                          -  -  -

 8
      IN RE:                      :
 9    DePUY ASR HIP IMPLANTS      :  CASE NO. 293
      LITIGATION                  :
10
11                        -  -  -
12                    June 1, 2011
13                        -  -  -
14            Transcript of the case management
15    hearing in the above-captioned matter taken
16    stenographically by Ann Marie Mitchell, a Federally
17    Approved Certified Realtime Reporter, Registered
18    Diplomate Reporter, Certified Court Reporter, and
19    Notary Public for the State of New Jersey, at the
20    Bergen County Courthouse, 10 Main Street,
21    Hackensack, New Jersey, commencing at 1:22 p.m.
22                        -  -  -
23              GOLKOW TECHNOLOGIES, INC.
             877.370.3377 ph|917.951.5672 fax
24                   deps@golkow.com
25
```

```
 1   BEFORE:
 2           HON. BRIAN R. MARTINOTTI, J.S.C.
             HON. DAVID A. KATZ, U.S.D.J.
 3
 4   APPEARANCES:
 5
 6           SEEGER WEISS LLP
             BY:  DAVID R. BUCHANAN, ESQUIRE
 7           One William Street
             New York, New York 10004
 8           (212) 584-0700
             dbuchanan@seegerweiss.com
 9           Representing the Plaintiffs
10
             WEITZ & LUXENBERG P.C.
11           BY:  ELLEN RELKIN, ESQUIRE
             700 Broadway
12           New York, New York 10003
             (212) 558-5500
13           erelkin@weitzlux.com
             Representing the Plaintiffs
14
15           SKIKOS CRAWFORD SKIKOS & JOSEPH
             BY:  STEVEN J. SKIKOS, ESQUIRE
16           625 Market Street
             11th Floor
17           San Francisco, California 94105
             (888) 813-2934
18           Representing the Plaintiffs
19
             DRINKER BIDDLE & REATH, LLP
20           BY:  SUSAN M. SHARKO, ESQUIRE
             500 Campus Drive
21           Florham Park, New Jersey 07932
             (973) 360-1100
22           Susan.sharko@dbr.com
             Representing the Defendant
23
24
25
```

```
 1   APPEARANCES (cont.'d):

 2
             TUCKER ELLIS & WEST LLP

 3           BY:  ROBERT C. TUCKER, ESQUIRE
             1150 Huntington Building

 4           925 Euclid Avenue
             Cleveland, Ohio 44115

 5           (216) 592-5000
             robert.tucker@tuckerellis.com

 6           Representing the Defendant

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    -  -  -

 2               JUDGE MARTINOTTI:  Everyone, welcome

 3    again to Bergen County.  It is my privilege to

 4    introduce Judge Katz, who will be presiding over

 5    this matter with me.

 6               JUDGE KATZ:  Thank you.  Please be

 7    seated, ladies and gentlemen.

 8               JUDGE MARTINOTTI:  Before we get

 9    started, we have a phone number for call-in.

10                    -  -  -

11               (A discussion off the record

12                 occurred.)

13                    -  -  -

14               JUDGE MARTINOTTI:  This is Judge

15    Martinotti.  Judge Katz is seated to my left.  We

16    are on the record in Bergen County, New Jersey, on

17    the DePuy Joint Federal and State Case Management

18    Conference.

19               JUDGE KATZ:  Thank you very much,

20    Judge Martinotti.

21               I very much appreciate the

22    opportunity to appear here with Judge Martinotti and

23    the leadership and attorneys in the New Jersey cases

24    involving the DePuy hip recall, as well as the MDL

25    case now centered in my court in the Western
```

 1    Division, Northern District of Ohio.

 2                  I want to welcome the large number of

 3    attorneys who have appeared this afternoon.  We're

 4    sorry we ran a little late in starting.  Those of

 5    you standing in the back who wish, there are some

 6    seats down in here.  Please don't worry about

 7    disturbing, just come down and sit down if you wish.

 8                  Let me articulate that which I had

 9    indicated to others.  Judge Martinotti and I desired

10    to have -- and he will speak for himself, obviously,

11    he is more than capable of doing so -- to have this

12    joint meeting both for the benefit of both the MDL

13    and New Jersey cases, that is, to share information,

14    where we are, where we hope to go, as Courts and you

15    as attorneys.

16                  We have an agenda which we will plod

17    through and share with all those here and on the

18    telephone with the effort to promote that

19    cooperation between federal and state, and not just

20    cooperation between federal and state judges, that's

21    really easy when you have someone of Judge

22    Martinotti's character, but between the leadership

23    and individual lawyers in the MDL and New Jersey and

24    other state court proceedings in this MDL case of

25    mine.

```
 1                     I'd like now to begin the formal and

 2    informal agenda, and with a report on pending MDL

 3    matters -- MDL cases, which will then be followed by

 4    a report on the New Jersey cases.

 5                     Mr. Tucker.

 6                     MR. TUCKER:  Thank you, Your Honor.

 7                     This is the third MDL hearing since

 8    the Court's appointment of leadership.  And over the

 9    course of the last couple months, the task of the

10    leadership on the plaintiffs' side and on the

11    defense side for this MDL has been to put in place

12    the foundation for issues that were important not

13    just in the MDL, but important in the state court

14    litigation here in New Jersey and Maryland and

15    elsewhere.

16                     We'll talk later on this agenda about

17    the explant preservation order which has --

18                     JUDGE MARTINOTTI:  Go ahead.  I'm

19    sorry, somebody must have just talked out.  I'm

20    sorry.

21                     PHONE SPEAKER:  We can't hear him.

22                     JUDGE MARTINOTTI:  Okay.  Maybe speak

23    louder and I'll move the speaker of the phone.

24                     MR. TUCKER:  So what we've tried to

25    do is we put in place foundational pieces for the
```

1    litigation that are important here in the MDL, as

2    well as in the state court litigation in New Jersey

3    and Maryland and where else -- wherever else we may

4    have state court litigation, which includes the

5    explant preservation order, a protective order and a

6    means by which counsel can easily file their

7    complaints in the MDL using a short form complaint,

8    which we'll talk about as well.

9              The important point that comes out of

10   this is that the MDL leadership has been able to put

11   in place, to the benefit of New Jersey and Maryland

12   and the other state courts litigation, the

13   foundational pieces that we can move quickly ahead

14   with discovery in working these cases up.

15             JUDGE KATZ:  Thank you.

16             MR. BUCHANAN:  Good afternoon, Your

17   Honors.  Dave Buchanan for the New Jersey

18   plaintiffs.

19             We're a little newer to the party

20   here in New Jersey, as the Courts are aware.  We had

21   our first CMC before Judge Martinotti in early May.

22   We've begun and have successfully achieved

23   organizational structure with the help of the Court.

24   We've also gotten well underway on the first day

25   orders, as I call them, many of which we were able

 1   to leverage I think the good work that's already

 2   been done within the MDL.

 3              We've taken Judge Martinotti's

 4   guidance at the initial CMC at heart to work with,

 5   as best we could, the good work that's already been

 6   done by the MDL folks.  We've identified a few New

 7   Jersey-specific wrinkles, which we'll identify among

 8   plaintiffs' counsel and see what proposals can be

 9   resolved with Ms. Sharko.  We've yet to do that, but

10   anticipate doing that shortly.

11              And I thank, frankly, the MDL folks

12   for the work they've done over the last three months

13   to give us a springboard to catch up so quickly.

14              JUDGE MARTINOTTI:  The New Jersey

15   Court is cognizant that our prior order was entered

16   less than 30 days ago, and in fact had given counsel

17   30 days to meet and confer on various issues.  We

18   did discuss this off the record informally at our

19   conference earlier, and I did add one component to

20   that order, which is that counsel -- I'm going to

21   get to that later in the agenda.  Counsel is going

22   to continue to meet and confer regarding a short

23   form complaint and answer which was added pursuant

24   to today's conference.

25              And, Counsel, I thank you for your

 1    cooperation, and I know the issues are going to be

 2    worked out.

 3                    JUDGE KATZ:  And I should have done

 4    this at the beginning.

 5                    I have talked with other judges who

 6    have cases pending in state court, including Judge

 7    Mittelstaedt in Maryland, who may be on this call.

 8    If so, welcome.  She was in trial and was not sure

 9    whether she would be capable of breaking the trial

10    at a critical point.  The judges in Georgia, Texas

11    and California.  And those people will also be, and

12    have been, given copies of documents requested from

13    the MDL, as others have.  And, hopefully, that will

14    assist counsel and the Courts in moving forward for

15    the benefit of both plaintiffs, defendants and their

16    respective counsel.

17                    JUDGE MITTELSTAEDT:  I just wanted to

18    say that I am here, Judge Mittelstaedt, and I am

19    glad to be a part of this.  And I look forward to

20    hearing from everyone.

21                    JUDGE KATZ:  Thank you for being

22    here, Judge.

23                    Steve, you were going to speak on the

24    next issue, other state court cases and

25    coordination?

June 1, 2011

```
 1                    MR. SKIKOS:  Your Honor, on behalf

 2      of --

 3                    JUDGE KATZ:  Or were you?

 4                    MR. SKIKOS:  I can talk about

 5      California.

 6                    JUDGE KATZ:  All right.  Why don't we

 7      do that.

 8                    MR. SKIKOS:  We had our first

 9      informal meeting with Judge Kramer, who has been

10      assigned to the JCCP by the California Supreme

11      Court.  We have a leadership structure that has been

12      put in place in California.  We have -- many of the

13      members who are in the leadership structure in

14      California are also participating in the MDL.  Some

15      are here.  And California is going to move

16      relatively quickly, but there's a lot of cooperation

17      with the MDL.  And we're glad to be here in New

18      Jersey.

19                    JUDGE KATZ:  Thank you.

20                    Susan, Ms. Sharko.

21                    MS. SHARKO:  In addition to

22      California, we have a small number of cases in a

23      variety of state courts, as Your Honor has outlined,

24      and we would hope that we can coordinate discovery

25      with the state courts as well and use the orders
```

```
 1   that we've all worked on so hard with the benefit of

 2   input from lawyers in the MDL and New Jersey and

 3   other states.

 4              JUDGE KATZ:  This may be an

 5   appropriate point in the proceedings for me to

 6   articulate why we, as judges, feel so strongly about

 7   the cooperation being sought in this and other cases

 8   of similar import and makeup.

 9              The most expensive portions in these

10   kinds of cases is discovery on the one hand and

11   experts on the other.  If duplication of effort with

12   respect to those two areas alone can be achieved

13   between and among the state and federal proceedings,

14   then it seems to me, at least, that the costs of the

15   proceedings overall will be diminished with the

16   attendant result of being able to move forward in a

17   more expeditious manner than if it were fragmented.

18   And that's one of the goals of this cooperation

19   which we as judges are seeking.

20              JUDGE MARTINOTTI:  Those of you who

21   appear before me know I concur 100 percent with

22   Judge Katz on, it doesn't make any sense to me in

23   New Jersey to reinvent the wheel.  We are, as

24   counsel had indicated, a little behind the MDL, yet

25   we hope to catch up shortly.
```

```
 1                    I would encourage and continue to

 2      encourage meeting and conferring regarding the

 3      adoption of as many orders that the MDL has entered

 4      as possible, understanding that there may be New

 5      Jersey wrinkles, if you will, with some of those

 6      orders, which certainly can be addressed.  But I

 7      think it is in everyone's best interest, plaintiff,

 8      defendant and certainly the Court's, that we

 9      continue this coordinated effort moving forward.

10                    JUDGE KATZ:  Thank you.

11                    The next item on the agenda, pardon

12      me, was item 4, "Preservation order and its

13      protocol."

14                    Bob Tucker.

15                    MR. TUCKER:  Your Honor, from the

16      outset of the litigation, I think counsel for both

17      plaintiffs and defendants recognized that the

18      preservation, testing and inspection of explants

19      were an important issue that we wanted to make sure

20      we tried to get right.  And so the leadership

21      appointed teams, people to negotiate an order and a

22      protocol for the testing and inspection, which has

23      been put in place, which ensures that explants are

24      preserved and tested and inspected pursuant to a

25      protocol that both sides have agreed upon.
```

```
 1              We've done this because we have

 2   explants from hospitals and from surgeons throughout

 3   the country.  And we wanted to make sure that we had

 4   a set protocol in place so that hospitals, no matter

 5   where they were in the country, surgeons, no matter

 6   where they were in the country, knew what they were

 7   to do with the explants and had a process in place

 8   for making sure that they were preserved.  And that

 9   order has been entered in the MDL.  We hope that it

10   will be entered in New Jersey and in California and

11   in the other states so that we have a nationwide

12   consistent protocol for the hospitals and surgeons

13   to follow in terms of preserving, testing and

14   inspecting the explants, which lead to evidence in

15   the case.

16              MR. BUCHANAN:  For New Jersey, Your

17   Honors, we have designees in leadership in New

18   Jersey looking at the current explant protocol from

19   the MDL.  Some of us have familiarity with the MDL

20   protocol and believe it's a good foundation, good

21   guidance from the Courts, excuse me, to the

22   hospitals and physicians for preservation of

23   materials.  It's being circulated among the broader

24   New Jersey group.  We'll be conferring with Ms.

25   Sharko in the event there's any issue that needs to
```

1    be taken up.

2                   JUDGE KATZ:  Thank you.  It seems to

3    me worth repeating how important we view this

4    preservation order and the attendant protocol in the

5    scheme of things.  It is protective, not only of the

6    plaintiff and plaintiff's counsel, but of the

7    surgeon and the hospital on the plaintiff's side and

8    the defendant on the defendant's side.

9                   Most hospitals are most happy to give

10   up control of the explant, assuming that it will be

11   deposited in an appropriate place, hospital or other

12   research center, with an attendant protocol.  So if

13   there is any question in your minds as to what to do

14   with the explant, I urge you to contact the

15   leadership in the MDL, or very soon in New Jersey,

16   to find out how to handle those explants if you

17   don't already know.

18                   MS. RELKIN:  I just wanted to add

19   that -- this is Ellen Relkin.  And anecdotally, my

20   experience, it's worked, because we have had

21   previous difficult conversations with hospital risk

22   managers who didn't want to save it, said, well,

23   we -- the methodology we sent them was violating

24   hazardous waste rules, red bag garbage, all this

25   stuff.  Since they've gotten the letters, we have

 1    not had any problems with preserving the device.  So

 2    I think it's had some success already.

 3                    JUDGE KATZ:  Thank you.

 4                    Anything more, anyone on that issue?

 5                    (No response.)

 6                    JUDGE KATZ:  This morning we went

 7    over with leadership a couple of minor changes to

 8    the protective order.  That protective order, as it

 9    has been ordered or altered with respect to a couple

10    of minor items, which you might want to address,

11    Bob, in a moment, is in the process of being

12    replicated and will be filed either tomorrow or

13    Friday and will be provided immediately to those

14    state court judges who have evidenced a desire to

15    have copies of orders.

16                    MR. TUCKER:  Again, with respect to

17    the protective order, the leadership got together,

18    negotiated that.  That order was entered at the last

19    MDL hearing.  There are a couple of technical

20    amendments to be made to it that arise from actually

21    working with the protective order as the documents

22    are being produced now, and so those technical

23    amendments will be provided.  One of them is to

24    permit the defendants to show protected documents to

25    their experts, which is set out in paragraphs 11(a)

1    and 11(b).  And the other is that the protective

2    order will apply to counsel and parties in the

3    litigation no matter when they come into the MDL,

4    not just at the time the protective order was

5    entered.  But those technical changes will be

6    submitted in to the Court for approval.

7                JUDGE KATZ:  Thank you.  I've already

8    seen them in handwritten form, and when they are

9    reduced in final copy, we will have them filed.

10               MR. BUCHANAN:  Yes, Your Honor.  A

11   conformed copy of the MDL protective order has been

12   tendered to New Jersey leadership.  It's been

13   circulated.  As I've indicated previously, there are

14   some New Jersey issues with our practice here, open

15   access to courts, that have presented some issue in

16   other mass torts, certainly with regard to the

17   filing of certain motions and the showings that need

18   to be made in connection with those and in advance

19   of filing materials under seal, so we just need to

20   make sure we've appropriately accounted for that,

21   and some other comments we've received from New

22   Jersey counsel.  That should be resolved in a master

23   markup for Ms. Sharko by the end of the week, and

24   hopefully, or next week, and submit any disputed

25   points to the Court if we can't agree.

June 1, 2011

```
 1                    JUDGE KATZ:  And I would imagine that

 2    there are other similar considerations in other

 3    state courts.  And so there may be some tweaking

 4    necessary in those state courts.  And I would assure

 5    any of the state court lawyers and judges that

 6    they'll have the full cooperation of the MDL

 7    leadership and with the judge.

 8                    MR. BUCHANAN:  Thank you, Your Honor.

 9                    JUDGE KATZ:  Anything further you

10    wanted to add, Ellen?

11                    MS. RELKIN:  Michelle Kranz, our

12    liaison, had gotten a number of inquiries from

13    individuals wondering if they needed to send to her

14    a copy of their signature before they have access.

15                    That's not essential, it's not

16    required, she does not need to maintain them.

17    Everyone who is in the litigation, and particularly

18    once the amendment is made to clarify it, it's

19    deemed to apply.  So you don't have to worry about

20    actually physically getting us a copy of your

21    signature.  It applies, and then access to the

22    documents is available.

23                    JUDGE KATZ:  As I understand it, it

24    applies immediately upon filing of the case within

25    the MDL and would there, after it was adopted by,
```

1   let's say, New Jersey, it would apply in the same

2   fashion to those litigants at that time.

3                   MR. BUCHANAN:  That's our

4   understanding, Your Honor, without need to sign on

5   to the attachment.

6                   JUDGE KATZ:  Short form complaint and

7   master amended answer accepted.

8                   MS. SHARKO:  Yes.  An order was

9   entered in the MDL providing for the filing of a

10  master answer short form and the use of a short form

11  complaint and a short form answer.  After we started

12  working with pleadings and using them, both sides

13  had some minor changes they wanted to implement.

14  We've exchanged those, and I would hope that we can

15  get an amended form of Case Management Order Number

16  4, which deals with this, to the Court hopefully

17  within the next few days, and then simultaneously,

18  in the short run, get the same process up and

19  running in New Jersey.

20                  MS. RELKIN:  That accurately

21  summarizes the situation.  We should have it done

22  very soon.

23                  MR. BUCHANAN:  That's on our punch

24  list for New Jersey.  We've got, as you know, a few

25  orders to catch up on, but it's certainly our desire

June 1, 2011

```
 1    to streamline the process for filing it in state

 2    court for efficiency among plaintiffs' counsel and

 3    for the ease of the defendants in answering our

 4    complaints.

 5                   JUDGE KATZ:  Very good.

 6                   Anything else on that issue?

 7                   (No response.)

 8                   JUDGE KATZ:  Let's move on to the

 9    preliminary disclosure form, et cetera, item number

10    7.

11                   Mr. Skikos.

12                   MR. SKIKOS:  As the Courts know,

13    these patients are in a varied state of medical

14    history.  Some have been implanted and still have

15    the implant in and others have been revised.

16                   So in the MDL, we had thought that it

17    would be productive to try to put together

18    information on each patient so that it would -- we

19    would be able to come up with a navigational plan

20    for the discovery in this case.

21                   So we've agreed to a one-page form

22    that the plaintiffs will fill out.  And that

23    one-page form is available to California and New

24    Jersey.

25                   And we've also agreed, we handed out
```

```
 1    the case management order that was attached to it.

 2    The terms of the one-page form is that it's not a

 3    discovery response.  It's not a verified discovery

 4    response.  The lawyer actually fills it out.  And

 5    it's provided within 30 days after it's entered as

 6    an order.

 7              The other important terms of it are

 8    that the defendants will turn over to us if they

 9    have the explant.  They'll let us know in an agreed

10    time period.

11              Also, and it's a very important part

12    of this negotiation, that there is information that

13    is in possession of sales reps.  Sales reps are

14    nonemployees, my understanding, of the company.  So

15    in working with the defense over the last month,

16    we've put together a team on behalf of the MDL,

17    California and New Jersey to negotiate a

18    preservation order for the sales reps and a

19    production order.

20              The production order would include,

21    for the case-specific side of it, production of

22    specific sales rep information as part of the

23    defendant fact sheets.  So that team is in process

24    with negotiations as part of the cooperation of

25    California, MDL and New Jersey to get that order.
```

```
 1   And that is very important for the progress of this

 2   litigation.

 3                 And then the one-page form, I have a

 4   handwritten order here, which I'll provide to Cathy

 5   at the end.

 6                 JUDGE KATZ:  Thank you.

 7                 Ms. Sharko.

 8                 MS. SHARKO:  Thank you.  We would

 9   hope that we can get use of the same form with the

10   same implementation order in New Jersey, and I look

11   forward to hearing from Mr. Buchanan with regards to

12   that.

13                 MR. BUCHANAN:  As I indicated prior

14   to the open conference, I had not been familiar -- I

15   had not seen the final form of the order.  I looked

16   at it quickly, as did co-leadership, and it looks to

17   be the type of information we ordinarily exchange as

18   part of this case management process with the Courts

19   so the Court can understand the docket and the

20   parties can understand the docket and facilitate, if

21   you will, a thumbnail sketch of what the cases look

22   like.  So I would think we'd be able to work with

23   Ms. Sharko to resolve that.

24                 We haven't had a chance to circulate

25   it more broadly to our many New Jersey counsel who
```

 1    are in the room today.  We'll do that expeditiously

 2    and get back to Ms. Sharko promptly.

 3                  JUDGE KATZ:  Thank you, Mr. Buchanan.

 4                  JUDGE MARTINOTTI:  Just to pick up on

 5    that for a second.  We did discuss, during our prior

 6    conference off the record, counsel's going to

 7    address the issue of whether or not we were going to

 8    do a spreadsheet on this particular litigation also.

 9                  MR. BUCHANAN:  Thank you, Your Honor,

10    yes.

11                  And I think we'll do that because,

12    from the Court's perspective, and, frankly,

13    plaintiffs' liaison counsel's perspective, we'd like

14    to be able to see the cases in a thumbnail sketch.

15    And I'll work with co-plaintiffs' counsel to resolve

16    on a proposal to Ms. Sharko as to the information we

17    want to provide.

18                  And looking at the form, it's a bit

19    more extensive than the type of information we

20    ordinarily provide and may be cumbersome if we

21    include all that information in the spreadsheet.  So

22    I'll see what Ms. Sharko would like to do and what

23    the Court would like, in terms of information on the

24    submitted spreadsheet.

25                  JUDGE MARTINOTTI:  Yes.  Submit it to

June 1, 2011

```
 1   the Court.  I will have to review that with,

 2   obviously, with administration and our IT department

 3   to see how it's going to be implemented.  And

 4   subject to my review of the information contained on

 5   it also.

 6                 MR. BUCHANAN:  That's fine.  Thank

 7   you.

 8                 JUDGE MARTINOTTI:  Okay?

 9                 JUDGE KATZ:  Thank you.

10                 Item number 8, "Discovery update."

11                 Ms. Sharko.

12                 MS. SHARKO:  Yes.  We've been working

13   very hard with the plaintiffs from all

14   jurisdictions.  There is a Rule 26 committee, which

15   for the plaintiffs contained representatives from

16   the MDL litigation, Mr. Gornick and others who have

17   taken a lead role in California, and Mr. Robinson.

18   And then Mr. Buchanan's played an active role on the

19   committee, and he's here wearing his New Jersey hat.

20                 The committee has agreed on all

21   manner of things, from metadata to issues of format,

22   Bates numbering and the like.  And a protocol order

23   embodying all those agreements will be entered

24   shortly in the MDL.

25                 We have produced our first
```

 1    installment of documents on May 19, 200,000 pages.

 2    The next production will occur on or about June 20

 3    and should be approximate 700,000 pages.

 4    Thereafter, we anticipate monthly productions.

 5                   At this point, since the protective

 6    order was only issued in the MDL and in Maryland,

 7    the documents were produced to MDL counsel and to

 8    the Maryland lawyer, who also has a fair number of

 9    cases in New Jersey.  Once we get protective orders

10    entered in California and New Jersey, we would

11    anticipate that each month we would provide the

12    documents to -- one set of the documents to the MDL,

13    one to California, one to New Jersey, and then the

14    plaintiffs' lawyers will figure out sharing from

15    there.

16                   In terms of a plaintiff and defense

17    fact sheet, that's next on the punch list.  We've

18    given the plaintiffs a proposed plaintiff fact

19    sheet.  We anticipate sitting down and discussing

20    that with them soon.  We are also anticipating them

21    returning the favor with a draft defense fact sheet.

22    And we will be prepared to discuss that, and we

23    anticipate an agreement.  Part of the defense fact

24    sheet will include information from the call reps

25    and distributors.

June 1, 2011

```
 1                    JUDGE KATZ:  Thank you.

 2                    Mr. Buchanan.

 3                    MR. BUCHANAN:  Yes, just to address

 4      briefly documents.  Before I was appointed by the

 5      Court as liaison counsel for New Jersey, I was

 6      serving as a co-chair of discovery in the MDL and

 7      have been active on the Rule 26 committee for the

 8      plaintiffs, helping to meet and confer on a

 9      production format and try and get documents flowing

10      as promptly as we could.

11                    To some extent, I think it's a very

12      good production order.  It was tailored to a very

13      specific vendor that the parties are using in the

14      MDL.  I want to be candid with the Court here today

15      that it has not been decided what New Jersey is

16      going to do in terms of managing the documents,

17      whether they're going to be self-managed within

18      individual firms or whether they're going to be

19      managed on a composite system.  That's something

20      that needs to be resolved, to the extent any format

21      adjustments may be needed to ensure the documents

22      can be used on whatever platform New Jersey agrees

23      to use.  And I'll confer with defense counsel on

24      that.

25                    I think that's a technical issue, and
```

1    a lot of care was spent trying to make sure we got

2    good information in the production format.  So it's

3    clearly almost all the way there.  I just want to

4    acknowledge that there may be technical issues that

5    have to be resolved for the defense, based on the

6    direction New Jersey goes for document review.

7                    JUDGE KATZ:  Thank you.

8                    Ms. Relkin.

9                    MS. RELKIN:  Just reporting on the

10   review of the documents.  We're very pleased that

11   production is rolling.  There are a few little

12   technical glitches that the technical people are

13   seeking to resolve.  And then there's a few

14   unresolved issues that we hope we can work out

15   regarding the cutoff for the first year of

16   production.  Plaintiffs believe earlier years prior

17   to 2001 is important.  There's issues about

18   redaction for relevance and issues on search terms,

19   and we're trying to work it out and hopefully we'll

20   work it out.  But there's a possibility it might

21   not.

22                    JUDGE KATZ:  Mr. Tucker.

23                    MR. TUCKER:  With respect to the last

24   three issues raised by Ms. Relkin, the first we

25   heard of it was today.  And we, of course, will meet

```
 1    and confer and work through those issues, as we
 2    always have.
 3                With respect to Mr. Buchanan's
 4    comments about perhaps needing a different format
 5    for document production in New Jersey, again, my
 6    reaction to that, and it's the first I heard of it
 7    is today, but my reaction is that the benefit of
 8    coordination is that we're not redoing formats for
 9    document production based upon jurisdictions.  The
10    lawyers involved here in New Jersey negotiated and
11    participated actively in the negotiation of the MDL
12    production format.  We have put in place the systems
13    necessary to produce documents in accordance with
14    that production format.  And for us to have to go
15    back and change production formats, whether it be
16    New Jersey or any other jurisdiction, would be very
17    expensive and very difficult, and most importantly,
18    delay the production of documents.  And that is not
19    what our intent is.  Our intent is to try and move
20    these documents from our side of the table to their
21    side of the table.  So we're glad to talk through
22    the technical issues on production format.  But as a
23    kind of umbrella issue, the importance of
24    maintaining that production format is very important
25    to us in terms of being able to achieve the
```

 1    efficiencies and objectives of the MDL.

 2               MR. BUCHANAN:  Your Honors, I think

 3    just to be clear, I've spent a lot of time doing

 4    electronic discovery over the years in a lot of mass

 5    torts.  I think we've resolved in a fairly standard

 6    production protocol in this case.  But the reality

 7    is, the New Jersey litigation is a little different

 8    than the MDL in the sense that there is leadership,

 9    yes, and we make documents available, yes.  But

10    individual firms may elect to use documents in a

11    particular manner.

12               And what I want to ensure, by

13    whatever means they're delivered to us, that firms

14    can have the maximum opportunity to review those

15    documents if they wish to.  We've never had an issue

16    with this in many large mass torts that I've worked

17    on, and I wouldn't anticipate that we would have one

18    here.  But I did want to note that the production

19    format was tailored to a particular vendor that I've

20    never worked with in the past, but had a specific

21    specification.

22               There are industry standard

23    specifications that document production vendors use,

24    and in my experience, routinely provide a

25    different -- it's called a load file, but a

```
 1   different file that will make it work on different

 2   people's systems.

 3                So I appreciate the concern of

 4   defense counsel.  I've seen it resolved quite easily

 5   by other vendors and other counsel in other cases.

 6   I think it may be premature to jump to a concern.

 7                JUDGE KATZ:  Okay.  Those who are

 8   less technically astute, such as me, and those green

 9   among us, should readily understand that 900,000,

10   quote, pages, unquote, will not be produced in hard

11   copy.  We're not going to create a field where there

12   was a forest.  It's all in electronics.

13                I think that completes 8, does it

14   not?

15                Mr. Tucker or Ms. Sharko.

16                MS. SHARKO:  Item number 8 on the

17   agenda is simply to inform the Court and counsel

18   that the MDL panel has created a separate MDL for

19   Pinnacle.  And that will be in Dallas, Texas before

20   Judge Kincaid.

21                JUDGE KATZ:  That was the hip

22   unrelated to the ALS or ASL?

23                MS. SHARKO:  Yes.  The Pinnacle has

24   not been recalled, contrary to some of the

25   advertising out there.
```

```
 1                    JUDGE KATZ:  Okay.  That completes

 2      the agenda that we had created among the leadership

 3      of both the MDL and the input of New Jersey.

 4                    I'll ask if any other of the

 5      leadership wishes to infuse any other topic on this

 6      meeting?

 7                    (No response.)

 8                    JUDGE KATZ:  Then I'll turn and ask,

 9      Judge, any questions that you have of me or of the

10      MDL leadership or the New Jersey leadership?

11                    JUDGE MARTINOTTI:  I do not.  I just,

12      with respect to New Jersey, we just need to address

13      a few housekeeping issues, specifically when our

14      next case management conference is going to be.

15                    My thought is July 19th.  Do you know

16      when the next MDL conference is?

17                    MS. SHARKO:  I'm required to be down

18      before Judge Higbee on August -- I'm sorry, on July

19      18, 19 and 20.  The 21st is fine.

20                    JUDGE MARTINOTTI:  Is the 21st okay?

21                    MR. BUCHANAN:  That's fine, Your

22      Honor.

23                    MS. SHARKO:  Thank you.

24                    JUDGE MARTINOTTI:  What time,

25      Counsel?  You tell me because I don't know if anyone
```

 1   is travelling from far that needs to make

 2   arrangements, child care.

 3              MS. SHARKO:  Any time is fine for the

 4   defense.

 5              MR. BUCHANAN:  I'm local.  10:00 or

 6   1:00 are fine.  Either one.

 7              JUDGE MARTINOTTI:  10:00?

 8              MS. SHARKO:  Thank you.

 9              JUDGE KATZ:  With regard, Judge

10   Martinotti, as to the next MDL meeting, in

11   discussing the matter with Steve Skikos, it is my

12   understanding that now that there has been an

13   organizational meeting in California in front of

14   Judge Kramer, that there is a possibility of

15   scheduling a meeting in California, in San

16   Francisco, admittedly not as nice a venue as here,

17   for July or August.

18              I will await the opportunity to

19   discuss the matter with Judge Kramer.  As soon as

20   those dates are made available to me, and they will

21   be in the alternative, I will disclose them to the

22   MDL leadership and others, and we will choose a date

23   convenient for the MDL leadership and the California

24   leadership, and others, of course, hopefully will

25   attend as well.  I would expect that within the next

 1    week to ten days, we would be able to have that

 2    conversation, but a lot depends on our respective

 3    agendas in the court.

 4                    Are there any other questions to be

 5    raised from those in attendance which are

 6    appropriate for this meeting and to be placed on

 7    record?

 8                    (No response.)

 9                    JUDGE KATZ:  Very good.

10                    I, on my behalf, and on behalf of the

11    MDL, wish to thank Judge Martinotti for his

12    graciousness in establishing this site at this time

13    for this meeting.  It has been extremely helpful to

14    me, and I would hope that it has been helpful to

15    those in leadership for both the MDL and New Jersey

16    and others in attendance.  And I look forward to

17    future similar meetings.

18                    JUDGE MARTINOTTI:  Yes.  Several

19    other loose ends on New Jersey's behalf.

20                    The prior case management order

21    required counsel to meet and confer within 30 days

22    to reach joint arrangements for agreement on several

23    issues.  Understanding that we are still within that

24    30 days, I'm just going to extend that 21 days from

25    today, just to give you some more time to continue

 1    to meet and confer on those issues.

 2              Our next case management conference,

 3    as indicated, is July 21st.  I just want to

 4    reiterate, and I am not going to continue to say

 5    this, but by consent of all parties and counsel,

 6    this Court does have permission to contact counsel

 7    on an ex parte basis to continue to discuss

 8    settlement.

 9              Does anybody have a different

10    position on that issue?

11              (No response.)

12              JUDGE MARTINOTTI:  Okay, thank you.

13              And also, New Jersey counsel, please

14    contact the attorneys' account to set up an account

15    for filing of pleadings.

16              Again, on behalf of myself, our

17    assignment judge, Peter Doyne, and Judge Polifroni,

18    our presiding judge, plus, of course, my staff, we

19    thank everyone for coming.  We welcome and thank

20    Judge Katz and Catherine for coming.  It's been an

21    honor and I think a first in the history of Bergen

22    County to ever host such an event, and we hope to

23    continue coordination and cooperation with you,

24    Judge, your staff and certainly all counsel.

25              And with this, we are adjourned.

1    Thank you.

2                  One other thing, there is a sign-in

3    sheet.  If you did not sign in, please do so.  Once

4    the sign-in is completed, we'll make copies and file

5    it.

6                  Also, counsel asked to use the

7    courtroom.  Feel free.

8                  (Hearing concluded at approximately

9          2:05 p.m.)

10                        -  -  -

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    CERTIFICATE

 2

 3            I, ANN MARIE MITCHELL, a Notary

 4    Public and Certified Court Reporter of the State of

 5    New Jersey, do hereby certify that the foregoing is

 6    a verbatim transcript of the hearing as taken

 7    stenographically by and before me at the time, place

 8    and on the date hereinbefore set forth, to the best

 9    of my ability.

10            I DO FURTHER CERTIFY that I am

11    neither a relative nor employee nor attorney nor

12    counsel of any of the parties to this action, and

13    that I am neither a relative nor employee of such

14    attorney or counsel, and that I am not financially

15    interested in the action.

16

17

18        _____

19        ANN MARIE MITCHELL, CRR, RDR, CCR

          Notary Number:  2356252

20        Notary Expiration:  February 22, 2012

          CCR Number:  30XI00212000

21

22

23

24

25
```

```
 1                      LAWYER'S NOTES

 2     PAGE  LINE

 3     ____  ____  _____

 4     ____  ____  _____

 5     ____  ____  _____

 6     ____  ____  _____

 7     ____  ____  _____

 8     ____  ____  _____

 9     ____  ____  _____

10     ____  ____  _____

11     ____  ____  _____

12     ____  ____  _____

13     ____  ____  _____

14     ____  ____  _____

15     ____  ____  _____

16     ____  ____  _____

17     ____  ____  _____

18     ____  ____  _____

19     ____  ____  _____

20     ____  ____  _____

21     ____  ____  _____

22     ____  ____  _____

23     ____  ____  _____

24     ____  ____  _____

25     ____  ____  _____
```