IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re:  DePUY ORTHOPAEDICS, INC., ASR™ HIP IMPLANT PRODUCTS LIABILITY LITIGATION | MDL Docket No. 1:10-md-2197 |
| This Document Relates To:<br><br>    ALL CASES | CASE MANAGEMENT ORDER NO. 6 |

## I.      SCOPE OF THE ORDER

Pursuant to agreement of counsel in this MDL, this Order shall apply to all actions currently pending in MDL No. 2197, all future actions transferred to MDL 2197, and all future actions direct-filed in MDL No. 2197.  This Order governs the Defendants' production of all electronic information in MDL No. 2197 and supersedes any local rules or orders governing the production of electronically stored information that may have been entered in any case that is or becomes part of this MDL proceeding.

## II.     PRODUCTION FORMAT OF DEFENDANTS' ELECTRONICALLY STORED INFORMATION

### A.     Definitions

1. "Document" means paper documents or electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form.

2. "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified.

3. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

4. "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

5. "Load/Unitization file" means a set of paper-scanned images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

6. "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

7. "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information.

8. Parties will use reasonable, best efforts to comply with the terms of this production format. In the event a party determines that it cannot materially comply with any requirement herein, they will disclose their inability to comply and parties will meet and confer regarding resolution of the identified issue.

B. **Format of Production**

1. Paper Documents

Paper documents, including spreadsheets maintained in paper form, will be produced either in hard copy form or as TIFF images (consistent with the specifications in Section II.B.2.a.). If provided as TIFF images, the production will include the appropriate Load/Unitization files which will, at a minimum, contain the following fields (described in detail in Section II.B.2.e., infra.):

(a) Beginning Production Number (ProdBeg),
(b) Ending Production Number (ProdEnd),
(c) Beginning Attachment Production Number (BegAttach),
(d) End Attachment Production Number (EndAttach),
(e) Custodian/Source,
(f) Confidentiality,
(g) Document Type,
(h) Page Counts, and
(i.) OCR.TXT file.

In scanning paper documents, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (i.e., paper documents

2

should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the beginning and ending document and attachment fields. Original document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape). This provision will apply to all physical documents that will be collected going forward. Defense has indicated that the organization of some documents may not have been preserved in material already collected. The parties will meet and confer to resolve any related issues.

2. ESI

   a. All TIFF-formatted documents will be single page, Group 4 TIFF at 300 x 300 dpi resolution and 8.5 x 11 inch page size, except for documents that in the producing party's reasonable judgment require a different resolution or page size. If a color image is produced in black and white, the receiving party may request the producing party to produce the original, color image. After receiving such a request for color production, the parties will meet and confer on a reasonable and cost-effective means of providing the requested documents.

   b. In the absence of agreement of the parties or order of Court, a Static Image will be provided in TIFF format (.TIF files). The image file names shall match the Bates number assigned to the image. All documents are to be provided with multi-page searchable OCR or Extracted Text files, as described in paragraph (c).

   c. **Text Files**. For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.

   d. There will be two Load/Unitization files accompanying all productions. One will be the Image load file and the other will be

the Metadata load file.  The specifics of these files are detailed in (i.) and (ii.) below:

    **(i.)**     **Image Load File**

- Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

- Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The name of the image load file shall mirror the name of the delivery volume, and should have an .lfp, .opt or .dii* extension (e.g., ABC001.lfp). The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.) *If .dii file is produced, the accompanying metadata load file shall be separate from the .dii file and not contained within the .dii file.*

- The load file shall contain one row per Tiff image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page. Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

    **(ii.)**     **Metadata Load File**

- The metadata load file shall use the following delimiters:

    - Column Delimiter: Pipe – | (ASCII 124)
    - Text Qualifier: Caret – ^ (ASCII 94)
    - New line: Registered sign - ® (ASCII 174)

4

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The first record shall contain the field names in the order of the data set forth in Section II.B.2.e. Metadata fields that are not applicable to a document shall be filled with a NULL value along with fields that were not able to be obtained due to a processing error or corrupt file.

- All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format.

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (i.e., ABC001.dat).

- The volume names shall be consecutive for each produced source.  (i.e., ABC001, ABC002, et. seq.).

e. ESI will be produced to the requesting party as Static Images together with a Load/Unitization file that will contain the Metadata fields described below on the document level, except as set forth in Section II.B.2.1., infra.  The following fields associated with each electronic document including the body of the document, will be produced in the appropriate Load/Unitization file.

5

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 1 | SOURCE | SOURCE | Name of party producing the document | All | L |
| 2 | CUSTODIAN | CUSTODIAN | Name of person or data source (non-human) from where documents/files are produced. **Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.* | All | M or L |
| 3 | CUSTODIAN ID | CUSTODIAN ID | Each CUSTODIAN from #2 above will be assigned a unique numeric identifier that will be maintained throughout productions. | All | M or L |
| 4 | BEGBATES | BEGDOC# | Beginning Bates Number (production number) | All | L |
| 5 | ENDBATES | ENDDOC# | End Bates Number (production number) | All | L |
| 6 | PGCOUNT | PGCOUNT | Number of pages in the document | All | L |
| 7 | FILESIZE | FILESIZE | File Size | All | M |
| 8 | APPLICAT | APPLICAT | Commonly associated application for the specified file type. (See 2 (l) below). | All | M |
| 9 | FILEPATH | FILEPATH (for Edocs) FOLDER (for emails) | File source path for all electronically collected documents and emails, which includes location, folder name, file name, and file source extension. | All | M |
| 10 | NATIVEFILELINK | DOCLINK | For documents provided in native format only | All | L |
| 11 | TEXTPATH | LOGFILE or FULLTEXT | File path for OCR or Extracted Text files per paragraph (d) above | All | L |
| 12 | MSGID | MSGID | Value extracted from parent message during processing | Email | M |
| 13 | FROM | FROM | Sender | Email | M |
| 14 | TO | TO | Recipient | Email | M |
| 15 | CC | CC | Additional Recipients | Email | M |
| 16 | BCC | BCC | Blind Additional Recipients | Email | M |

6

| | Field | Summation Field (Florida) | Definition | Doc Type | Source: Load File (L) or Metadata (M) |
|---|---|---|---|---|---|
| 17 | SUBJECT | SUBJECT | Subject line of email | Email | M |
| 18 | PARENTBATES | PARENTID | Begin Bates number for the parent email of a family (will not be populated for documents that are not part of a family) | Email | L |
| 19 | ATTACHBATES | ATTACHID | Bates number from the first page of each attachment | Email | L |
| 20 | BEGATTACH | (will be provided from ATTRANGE) | First Bates number of family range (i.e. Bates number of the first page of the parent email) | Email | L |
| 21 | ENDATTACH | (will be provided from ATTRANGE) | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | Email | L |
| 22 | ATTACHCOUNT | ATTACHMENT COUNT | Number of attachments to an email | Email | L |
| 23 | ATTACHNAME | ATTACHMENT LIST | Name of each individual attachment | Email | M |
| 24 | DATESENT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Date Sent | Email | M |
| 25 | DATERCVD (mm/dd/yyyy hh:mm:ss AM) | DATERCVD | Date Received | Email | M |
| 26 | EMAILDATSORT (mm/dd/yyyy hh:mm:ss AM) | DATESENT | Sent Date of the parent email (physically top email in a chain, i.e. immediate/direct parent email) | Email | L |
| 27 | READ/UNREAD | | Whether the Outlook item was read or unread at the time of collection. Values provided will be "Yes" for read, "No" for unread, and a null value where the read/unread flag value is unavailable.[1] | Email | M |
| 28 | Email Outlook Type | Email Outlook Type | Type of Outlook item, e.g. email, calendar item, contact, note, task | Email | M |
| 29 | HASHVALUE | MD5 HASH | MD5 Hash Value for Edocs | Edocs | M |

---

[1] Read/Unread flag is unavailable for document set collected prior to May 1, 2011. Read/Unread field values will be provided for messaging data collected after May 1, 2011.

7

| | **Field** | **Summation Field (Florida)** | **Definition** | **Doc Type** | **Source: Load File (L) or Metadata (M)** |
|---|---|---|---|---|---|
| 30 | TITLE | DOCTITLE | Title provided by user within the document | Edocs | M |
| 31 | AUTHOR | AUTHOR | Creator of a document | Edocs | M |
| 32 | DATECRTD (mm/dd/yyyy hh:mm:ss AM) | DATECRTD | Creation Date | Edocs | M |
| 33 | MODIFIED BY | LAST EDITED BY | Person who has modified a document | Edocs | M |
| 34 | LASTMODD (mm/dd/yyyy hh:mm:ss AM) | LASTMODD (mm/dd/yyyy hh:mm:ss AM) | Last Modified Date | Edocs | M |
| 35 | DocumentType | DocumentType | Descriptor for the type of document: "**E-document**" for electronic documents not attached to emails; "**Emails**" for all emails; "**E-attachments**" for files that were attachments to emails; and "**Physicals**" for hard copy physical documents that have been scanned and converted to an electronic image. | All | M |
| 36 | Importance | Importance | High Importance – indicates Priority in Email message. | Email | M |
| 37 | Redacted | Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for unredacted documents. | All | M |
| 38 | ProdVol | ProdVol | Name of media that data was produced on. Wave 001 – Hard Drive | All | M |

8

|    | **Field**       | **Summation Field (Florida)** | **Definition** | **Doc Type** | **Source: Load File (L) or Metadata (M)** |
|----|-----------------|-------------------------------|----------------|--------------|-------------------------------------------|
| 39 | Confidentiality | Confidentiality               | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective Order. "Yes" for Confidential documents; "No" for documents that are not so designated. | All | M |
| 40 | Color           | Color                         | Flag to indicate that document contains color in substantive text or color is otherwise used to convey meaningful information. This can be used to identify these documents to request as native files. Values provided will be "Yes" for color, "No" for no color.[2] | All | M |

       This list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI; that do not exist as part of the original Metadata of the document; or that would be burdensome or costly to obtain. The parties retain the right to move the Court for the production of additional electronic metadata fields should ongoing discovery reveal the need for such Metadata. The designation of a document as a "Protected Document" pursuant to the Protective Order of Confidentiality shall include the metadata produced for that document.

  f. **Bates Numbering**: All images must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, and not otherwise identified on a privilege log, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

  g. When processing ESI, **GMT** should be selected as the time zone. To the extent that a party has already processed ESI using a

---

[2] Color flag is unavailable for document set collected prior to May 1, 2011. Color flag values will be provided for documents collected after May 1, 2011.

9

        different time zone, the producing party will note the time zone used in its processing.

- h. When processing ESI for review and for production in TIFF format, the producing party will make reasonable attempts to force off **AutoDate**.

- i. When the Static Image is produced, the producing party shall make reasonable attempts to maintain and not modify the original Native File and its metadata.

- j. Production of databases or other structured data will be the subject of separate agreements, and is excluded from this Protocol.

- k. Electronic file collection will be "De-NISTed", removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches will be through MD5 Hash values.

- l. User-generated files that have been collected that cannot be produced and/ or imaged because of technical issues should be identified as exception files and included on a log that lists all metadata set forth in Section II.B.2.e. except that the metadata for the APPLICAT field will be obtained from binary encoding from the file, and reason for exception: for example, corruption, unavailable password protection, proprietary software, or other technical issues. The producing party shall provide a copy of this log with its production. If the receiving party requests production of any files listed on the exception log, the parties will meet and confer on a reasonable and cost-effective means of providing the requested data.

- m. Defendants will globally de-duplicate identical ESI as follows:

    (1) Electronic Files: Electronic files will be de-duplicated based upon calculated MD5 Hash values for binary file content. File contents only will be used for MD5 Hash value calculation and will not include operating system metadata (filename, file dates) values.

    (2) Messaging Files: Messaging files will be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. The following fields will be used to create the unique value for each message: To; From; CC; BCC; Date Sent; Subject; Body; and, MD5 Hash values for all attachments, in attachment order. Messaging materials will be de-duplicated at a family level, including message and attachment(s).

        (3) Log Files: For the existing file collection containing fully processed duplicate files and messages, duplicate documents will be listed in a de-duplication log including the same agreed production format meta-data structure and data delivery criteria as for the "master" production documents. Moving forward, as collected electronic materials are globally de-duplicated during system intake using the above guidelines, defendants will produce logs containing the meta-data field values for de-duplicated files. The metadata provided is an accurate representation of the data existing for the documents at the time of collection.

n. **Embedded Objects**: Objects embedded in Microsoft Word and .RTF will be extracted as separate documents and produced as attachments to the document.

o. **Compressed files**. Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

p. **Audio and Video Files**. All audio files and video files shall be produced in native format with the source file path provided.

q. **Replacement files**: Any documents that are replaced in later productions shall be clearly designated as such, by appending a "-R" to the production prefix and by a letter accompanying the production clearly designating such documents as replacements.

r. **Native Files**. The parties acknowledge that production in TIFF and load file format may be inadequate for certain types of ESI (e.g. spreadsheets). Upon request, producing party will comply with reasonable requests to produce particularly identified ESI in its native format. If a dispute arises with respect to the provision, the parties agree to meet and confer in an effort to resolve their differences.

s. Any native files that are produced shall be produced with the source file path provided, as well as all extracted text and applicable metadata fields set forth in Section II.B.2.e.

t. The parties shall exchange production samples as follows: (1) standard production from each source (physical, email, electronic document, native, etc.) which fully exercises the metadata fields set forth above; (2) replacement production; (3) clawback.

u. **Redacted Document Log**. The producing party will provide a log identifying by bates/production number each document that contains a redaction and the reason for the redaction.

      v.    **Privilege Log**. Privilege logs shall be produced in PDF format, and shall be accompanied by an Excel copy of the log. The PDF copy will be the official privilege log of record.

      w.    **Suppressed Metadata Log**. The producing party will provide a log identifying by bates/production number each document that contains metadata field values subject to Privacy or Privilege exceptions. Suppressed field values will be replaced in whole with a "REDACTED" placeholder value. The log will provide the document BEGBATES value, field name suppressed and the suppression reason.

### C. Objections to Production of ESI

1. A party may object to production of ESI that is not reasonably accessible because of undue burden or cost.

2. If asserting an objection based on Section II.C.1., the responding party will inform the requesting party of the electronic information it is willing to produce, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested production would impose an undue burden or is unreasonably costly, and afford the requesting party an opportunity to propose an alternative means of compliance with the request, including payment of all or part of the costs of retrieving the information.

### D. Continuing Obligations

1. To expedite discovery of relevant electronic evidence and reduce costs, the parties' computer experts will informally cooperate and discuss procedures or protocols to facilitate identification, retrieval and production of computerized information. This responsibility shall be continuing, unless otherwise ordered by the Court.

2. The inadvertent production of any materials constituting or containing attorney-client privileged information or attorney work product shall not waive any claim of privilege. If a receiving party disclosed the document(s) or information contained in the document(s) before being notified of its inadvertent production, the receiving party shall take reasonable steps to retrieve that information until the privilege claim has been resolved.

3. The parties will work with one another in good faith to resolve any issues, disputes or objections that arise in connection with electronic discovery issues before raising such matters with the court. Issues shall be raised promptly in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The parties will use their best efforts to raise any objections or other requests related to a production within ninety (90) days of receipt of that production. In any event, the parties must raise

any objections or other issues sufficiently in advance of the close of discovery to permit good faith negotiations to resolve the matter and briefing of any related motion such that the court has a reasonable time to rule thereon prior to the close of discovery.

    *s/ David A. Katz*

DAVID A. KATZ
U.S. DISTRICT JUDGE

1265506