1                IN THE UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

3              HONORABLE DAVID A. KATZ, JUDGE PRESIDING

4            (Hearing held in San Francisco Superior Court)
              400 McAllister Street, San Francscio, California)

5

6                            ---oOo---

7   IN RE:                              )
                                        )
8                                       ) MDL Docket No. 1742
                                        )
9                                       ) **Case No. A:10-MD-2197**
    DePUY ORTHOPAEDICS, INC., ASR HIP   )
10  IMPLANT PRODUCTS                    )
                                        )
11                                      )
                                        )
    _____)
12                                      )
    COORDINATION PROCEEDING             )
13  SPECIAL TITLE [Rule 1550(b)]        )
                                        )   State of California
14                                      )   **JCCP NO. 4649**
                                        )
15                                      )
    DePUY ASR HIP SYSTEM CASES          )
16                                      )
                                        )
17  _____)

18

19            **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

20                    Tuesday, July 26, 2011

21

22

23

24

25

26  Reported by:  Janet S. Pond, CSR #5292, CRR
                  Official Reporter

27

28

1               **A P P E A R A N C E S   O F   C O U N S E L**

2

Plaintiffs' Liaison/Co-Lead Counsel:

3

4       WEITZ & LUXENBERG, P.C.
        BY:  **ELLEN RELKIN,** Attorney at Law
        700 Broadway
5       New York, NY  10003

6

7       ZOLL KRANZ & BORGESS, LLC
        BY:  **MICHELLE L. KRANZ,** Attorney at Law
        6620 West Central Avenue, Suite 200
8       Toledo, OH  43617

9

10      WALKUP, MELODIA, KELLY & SCHOENBERGER
        BY:  **MICHAEL A. KELLY,** Attorney at Law
             **MATTHEW D. DAVIS,** Attorney at Law
11      650 California Street, 26th Floor
        San Francisco, CA  94108

12

13      SKIKOS, CRAWFORD, SKIKOS, JOSEPH & MILLICAN
        BY:  **STEVEN J. SKIKOS,** Attorney at Law
14           **PIPER L. MORRISON,** Attorney at Law
             **ADRIANA SUAREZ DESMOND,** Attorney at Law
15      625 Market Street, 11th Floor
        San Francisco, CA  94105

16

17      GIRARDI AND KEESE
        BY:  **JAMES G. O'CALLAHAN,** Attorney at Law
18      1126 Wilshire Boulevard
        Los Angeles, CA  90017-1904
19

20

21                          ---oOo---

22

23

24              (APPEARANCES CONTINUED NEXT PAGE)

25

26

27

28

1          **PLAINTIFFS' APPEARANCES (Continued)**

2    For Plaintiffs (in alphabetical order by firm name):

3          ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.
           BY:  **THOMAS R. ANAPOL,** Attorney at Law
4          1040 Kings Highway North, Suite 304
           Cherry Hill, NJ  08034

5

6          ANDREWS & THORNTON
           BY:  **ANNE ANDREWS**, Attorney at Law
7          2 Corporate Park, Suite 110
           Irvine, CA  92606

8

9          FRANKLIN D. AZAR & ASSOCIATES, P.C.
           BY:  **FRANKLIN D. AZAR,** Attorney at Law
10         14426 East Evans Avenue
           Aurora, CO  80014-1474

11

12         ROBERT A. BALL, A Professional Corporation
           BY:  **ROBERT A. BALL,** Attorney at Law  (CourtCall)
13         225 Broadway, #2220
           San Diego, CA  92101-5089

14

15         BEASLEY ALLEN
           BY:  **NAVAN WARD,** Attorney at Law
16         234 Commerce Street
           P. O. Box 4160
17         Montgomery, AL  36103-4160

18

19         BERNSTEIN LIEBHARD LLP
           BY:  **FELECIA LISTWA STERN,** Attorney at Law
20         10 East 40th Street
           New York, NY  10016

21

22         THE BRANDI LAW FIRM
           BY:  **THOMAS J. BRANDI,** Attorney at Law
23         354 Pine Street, 3rd Floor
           San Francisco, CA  94104

24

25         BRANNON & ASSOCIATES
           BY:  **DOUGLAS BRANNON,** Attorney at Law  (CourtCall)
26         130 West 2nd Street, #900
           Dayton, OH  45402

27
                     (APPEARANCES CONTINUED NEXT PAGE)
28

A P P E A R A N C E S (Continued)

For the Plaintiffs (continued):

      BURKE & THOMAS, PLLP
      BY:  **RICHARD J. THOMAS,** Attorney at Law  (CourtCall)
      3900 Northwoods Drive, Suite 200
      Arden Hills, MN  55112

      THE CARTWRIGHT LAW FIRM, INC.
      BY:  **JOHN BOLLIER,** Attorney at Law  (CourtCall)
      222 Front Street, 5th Floor
      San Francisco, CA  94111

      CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD LLP
      BY:  **GAYLE M. BLATT,** Attorney at Law  (CourtCall)
      110 Laurel Street
      San Diego, CA  92101

      CHEONG, DENOVE ROWELL & BENNETT
      BY:  **JOHN D. ROWELL,** Attorney at Law
      10100 Santa Monica Boulevard, Suite 2460
      Los Angeles, CA  90067

      CHILDERS SCHLUETER & SMITH, LLC
      BY:  **RICHARD R. SCHLUETER,** Attorney at Law  (CourtCall)
      1932 North Druid Hills Road
      Atlanta GA  30319

      CLARK, BURNETT, LOVE & LEE
      BY:  **LISA FLINT,** Attorney at Law
      440 Louisiana Street, Suite 1600
      Houston, TX  77002

      THE COCHRAN FIRM
      BY:  **JOSEPH M. BARRETT,** Attorney at Law
      4929 Wilshire Boulevard, Suite 1010
      Los Angeles, CA  90071

      COCHRAN, CHERRY, GIVENS, SMITH, SISTRUNK & SAMS, P.C.
      BY:  **HEZEKIAH SISTRUNK, JR.,** Attorney at Law
      The Chandler Building
      127 Peachtree Street, NE, Suite 800
      Atlanta, GA  30303

                (APPEARANCES CONTINUED NEXT PAGE)

1          A P P E A R A N C E S (Continued)

2    For the Plaintiffs (continued):

3          CRONIN FRIED, SEKIYA, KEKINA & FAIRBANKS, LC
           BY:  **GREGORY Y. TOM,** Attorney at Law  (CourtCall)
4          600 Davies Pacific Center
           841 Bishop Street
5          Honolulu, HI  96813-3962

6

           CUNNINGHAM BOUNDS, LLC
7          BY:  **STEVEN L. NICHOLAS,** Attorney at Law  (CourtCall)
           1601 Dauphin Street
8          Mobile, AL  36604

9

           FINKELSTEIN & PARTNERS, LLP
10         BY:  **MARY ELLEN WRIGHT,** Attorney at Law  (CourtCall)
           1279 Route 300
11         Newburgh, NY  12551

12

           FLEMING & ASSOCIATES LLP
13         BY:  **G. SEAN JEZ,** Attorney at Law  (CourtCall)
           1330 Post Oak Boulevard, Suite 3030
14         Houston, TX  77056

15

           FOLEY & MANSFIELD LLP
16         BY:  **STEPHEN J. FOLEY,** Attorney at Law
                **KEITH M. AMEELE,** Attorney at Law
17         300 South Grand, Suite 2800
           Los Angeles, CA  90071
18

19         GILLIN, JACOBSON, ELLIS & LARSEN
           BY:  **KRISTIN M. LUCEY,** Attorney at Law
20         Two Theatre Square, Suite 230
           Orinda, CA  94563
21

22         JAMES P. GINZKEY, TRIAL ATTORNEY
           BY:  **JAMES P. GINZKEY,** Attorney at Law  (CourtCall)
23         221 E. Washington Street
           Boomington, IL  61701
24

25         GLASSER & GLASSER PLC
           BY:  **KIP A. HARBISON,** Attorney at Law  (CourtCall)
26         580 East Main Street, Suite 600
           Norfolk, VA  23510
27

28              (APPEARANCES CONTINUED NEXT PAGE)

<u>A P P E A R A N C E S</u> (Continued)

For the Plaintiffs (continued):

**DEAN A. GOETZ,** Attorney at Law
The Ocean Building
603 North Coast Highway 101
Solana Beach, CA  92075


THE GOMEZ LAW FIRM
BY:  **JOHN H. GOMEZ,** Attorney at Law
625 Broadway, Suite 1200
San Diego, CA  92101


GOZA & HONNOLD, LLC
BY:  **BRADLEY D. HONNOLD,** Attorney at Law  (CourtCall)
11150 Overbrook Road, Suite 250
Leawood, KS  66211-2241


HANLY CONROY BIERSTEIN SHERIDAN FISHER HAYES LLP
BY:  **JAYNE CONROY,** Attorney at Law
112 Madison Avenue
New York, NY  10016-7416


HARE, WYNN, NEWELL & NEWTON, LLP
BY:  **DONALD MCKENNA,** Attorney at Law  (CourtCall)
The Historic Massey Building
2025 Third Avenue North, Suite 800
Birmingham, AL  35203


HARRISON DAVIS STEAKLEY MORRISON, P.C.
BY:  **STEPHEN E. HARRISON, II,** Attorney at Law
5 Ritchie Road
Waco, TX  76712


**JOHN DAVID HART**, Attorney At Law
Wells Fargo Tower
201 Main Street, Suite 1720
Fort Worth, TX  76102


HELLER HOLMES & ASSOCIATES
BY:  **BRENT D. HOLMES,** Attorney at Law  (CourtCall)
1101 Broadway Avenue
Mattoon, IL  61938


(APPEARANCES CONTINUED NEXT PAGE)

A P P E A R A N C E S (Continued)

For the Plaintiffs (continued):

        HERMAN, HERMAN, KATZ & COTLAR LLP
        BY:  **LEONARD DAVIS,** Attorney at Law  (CourtCall)
        820 o'kEEFE aVENUE
        New Orleans, LA  70113


        HOLBERG & WEAVER LLP
        BY:  **GEORGE M. WEAVER,** Attorney at Law  (CourtCall)
        2921 Piedmont Road, NE, Suite C
        Atlanta, GA  30305


        HUBER, SLACK, HOUGHTALING, PANDIT & THOMAS, LLP
        BY:  **CHARLES M. THOMAS,** Attorney at Law  (CourtCall)
        1100 Poydras Street, Suite 1405
        New Orleans, LA 70163


        JOHNSON BECKER PLLC
        BY:  **TIMOTHY BECKER,** Attorney at Law
        33 South Sixth Street, Suite 4530
        Minneapolis, MN  55402


        JOHNSON, JOHNSON, LARSON & SCHALLER, P.C.
        BY:  **MICHELE C. SMITH,** Attorney at Law  (CourtCall)
        975 Oak Street
        Eugene, OR  97401


        JONES WARD PLC
        BY:  **JASPER D. WARD,** Attorney at Law
        Marion E. Taylor Building
        312 S. Fourth Street, 6th Floor
        Louisville, KY  40202


        KENNEDY HODGES LLP
        BY:  **DONNY J. FOTY,** Attorney at Law  (CourtCall)
        711 W. Alabama Street
        Houston, TX  77006


        KERSHAW CUTTER & RATINOFF LLP
        BY:  **WILLIAM A. KERSHAW,** Attorney at Law
        401 Watt Avenue
        Sacramento, CA  95864


                    (APPEARANCES CONTINUED NEXT PAGE)

1                    A P P E A R A N C E S (Continued)

2    For the Plaintiffs (continued):

3         KHORRAMI POLLARD & ABIR
          BY:  **ALISON WILSON,** Attorney at Law  (CourtCall)
4         444 S. Flower Street, 33rd Floor
          Los Angeles, CA  90071

5

6         KIESEL BOUCHER LARSON, LLP
          BY:  **MATTHEW A. YOUNG,** Attorney at Law
7         8648 Wilshire Boulevard
          Beverly Hills, CA  90211-2910

8

9         KRESCH/OLIVER, PLLC
          BY:  **ALYSON OLIVER,** Attorney at Law
10        24100 Southfield Road, Suite 305
          Southfield, MI  48075

11

12        LAKINCHAPMAN, LLC
          BY:  **ROBERT J. EVOLA,** Attorney at Law  (CourtCall)
13        300 Evans Avenue, P. O.Box 229
          Wood River, IL  62095

14

15        THE LANIER LAW FIRM
          BY:  **LEE A. CIRSCH,** Attorney at Law
16        2049 Century Park East, Suite 1940
          Los Angeles, CA  90067

17        THE LANIER LAW FIRM
18        BY:  **PAUL R. CORDELLA,** Attorney at Law
          126 East 56th Street, 6th Floor
19        New York, NY  10022

20

          LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR, P.A.
21        BY:  **DANIEL A. NIGH,** Attorney at Law
               **BEN GORDON,** Attorney at Law
22        316 S. Baylen Street, Suite 600
          Pensacola, FL  32591

23

24        LEVIN SIMES KAISER & GORNICK LLP
          BY:  **LAWRENCE GORNICK,** Attorney at Law
25        44 Montgomery Street, 36th Floor
          San Francisco, CA  94104

26

27
                      (APPEARANCES CONTINUED NEXT PAGE)
28

1              A P P E A R A N C E S (Continued)

2    For the Plaintiffs (continued):

3         LEWIS & ROBERTS, PLLC
          BY:  **WILLIAM J. BLAKEMORE,** Attorney at Law
4         3700 Glenwood Avenue, Suite 410
          Raleigh, NC  27612

5

6         LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
          BY:  **LEXI J. HAZAM,** Attorney at Law
7         275 Battery Street, 29th Floor
          San Francisco, CA  94111-3339

8

9         LYBECK MURPHY, LLP
          BY:  **LORY R. LYBECK,** Attorney at Law  (CourtCall)
10        7900 Southeast 28th Street
          Mercer Island, WA  98040

11

12        MANN COWAN & POTTER
          BY:  **COURTNEY HUTCHINSON,** Attorney at Law  (CourtCall)
13        2000B Southbridge Parkway, Suite 601
          Birmingham, AL  35209-7744

14

15        MCCUNEWRIGHT, LLP
          BY:  **KRISTY M. AREVALO,** Attorney at Law  (CourtCall)
16        2068 Orange Tree Lane, Suite 216
          Redlands, CA  92374

17

18        MCNICHOLAS & MCNICHOLAS LLP
          BY:  **JENNIFER OSTERTAG,** Attorney at Law  (CourtCall)
19        10866 Wilshire Boulevard, Suite 1400
          Los Angeles, CA  90024

20

21        THE MILLER FIRM LLC
          BY:  **NATHAN D. CROMLEY,** Attorney at Law  (CourtCall)
22        108 Railroad Avenue
          Orange, VA  22960

23

24        THE MOODY LAW FIRM
          BY:  **WILLARD J. MOODY, JR.,** Attorney at Law
25        500 Crawford Street, Suite 300
          Portsmouth, VA  23704

26

27              (APPEARANCES CONTINUED NEXT PAGE)

28

1        A P P E A R A N C E S (Continued)

2   For the Plaintiffs (continued):

3        NEBLETT, BEARD & ARSENAULT
         BY:  **RICHARD J. ARSENAULT,** Attorney at Law
4        2220 Bonaventure Court
         Alexandria, LA  71309

5

6        NEWSOME LAW FIRM
         BY:  **ANDREW F. KNOPF,** Attorney at Law  (CourtCall)
7        201 South Orange Avenue, Suite 1500
         Orlando, FL  32801

8

9        NEIL C. NEWSON & ASSOCIATES
         BY:  **NEIL C. NEWSON,** Attorney at Law  (CourtCall)
10       8447 Wilshire Boulevard, Suite 204
         Beverly Hills, CA  90211

11

12       PANISH SHEA & BOYLE LLP
         BY:  **PETER L. KAUFMAN,** Attorney at Law
13            **PETER J. POLOS,** Attorney at Law
         11111 Santa Monica Boulevard, Suite 700
14       Los Angeles, CA  90025

15

16       PARKER WAICHMAN ALONSO LLP
         BY:  **DANIEL C. BURKE,** Attorney at Law
17       6 Harbor Park Drive
         Port Washington, NY  11050-447

18

19       PHILLIPS LAW GROUP
         BY:  **LOWELL W. FINSON,** Attorney at Law  (CourtCall)
20       20 East Thomas Road, 26th Floor
         Phoenix, AZ  85012

21

22       PITTMAN DUTTON & HELLUMS
         BY:  **CHRIS T. HELLUMS,** Attorney at Law  (CourtCall)
23       1100 Park Place Tower
         2001 Park Place
24       Birmingham, AL  35203

25       POGUST BRASLOW & MILLROOD, LLC
         BY:  **TOBIAS L. MILLROOD,** Attorney at Law
26       8 Tower Bridge, Suite 1520
         161 Washington Street
27       Conshohocken, PA  19428

28              (APPEARANCES CONTINUED NEXT PAGE)

1        A P P E A R A N C E S (Continued)

2   For the Plaintiffs (continued):

3        POPE, MCGLAMRY, KILPATRICK, MORRISON & NORWOOD, LLP
         BY:  **MICHAEL L. MCGLAMRY,** Attorney at Law
4        The Pinnacle, Suite 925
         3455 Peachtree Road, N.E.
5        Atlanta, GA  30326-3243

6        PROVOST UMPHREY LAW FIRM LLP
         BY:  **ZONA JONES,** Attorney at Law  (CourtCall)
7        490 Park Street, P. O. Box 4905
         Beaumont, TX  77704

8
         ROBINS, KAPLAN, MILLER & CIRESI LLP
9        BY:  **KATE E. JAYCOX,** Attorney at Law
              **VINCENT MOCCIO,** Attorney at Law
10       2800 LaSalle Plaza
         800 LaSalle Avenue
11       Minneapolis, MN  55402-2015

12

13       ROBINSON, CALCAGNIE & ROBINSON
         BY:  **MARK P. ROBINSON, JR.,** Attorney at Law
14            **KARREN T. SCHAFFER,** Attorney at Law
              **KAREN BARTH MENZIES,** Attorney at Law
              **DANIEL S. ROBINSON,** Attorney at Law
15       620 Newport Center Drive, Suite 700
         Newport Beach, CA  92660

16

17       SALVATORE & NOKES
         BY:  **MELINDA DAVIS NOKES,** Attorney at Law
18       410 Broadway, Suite 100
         Laguna Beach, CA  92651

19

20       SCHWARTZ & ASSOCIATES, P.A.
         BY:  **PATRICK S. WOOTEN,** Attorney at Law
21       162 East Amite Street
         Jackson, MS  39207-3949

22

23       SEEGER SALVAS LLP
         BY:  **KENNETH M. SEEGER,** Attorney at Law
24            **BRIAN J. DEVINE,** Attorney at Law
         455 Market Street, Suite 1530
25       San Francisco, CA  94105

26

27              (APPEARANCES CONTINUED NEXT PAGE)

28

A P P E A R A N C E S (Continued)

For the Plaintiffs (continued):

        SEEGER WEISS LLP
        BY:  **ASA R. DANES,** Attorney at Law
        77 Water Street, 26th Floor
        New York, NY  10005


        SHOWARD LAW FIRM
        BY:  **GARY S. GRYNKEWICH,** Attorney at Law
        2990 N. Campbell Avenue, Suite 230
        Tucson, AZ  85719


        SULLIVAN PAPAIN BLOCK MCGRATH CANNAVO P.C.
        BY:  **ANDREW CARBOY,** Attorney at Law  (CourtCall)
        120 Broadway, 18th Floor
        New York, NY  10271


        WATTS GUERRA CRAFT LLP
        BY:  **ROBERT J. PATTERSON,** Attorney at Law
        811 Barton Springs Road, Suite 725
        Austin, TX  78704


        WEISMAN, KENNEDY & BERRIS CO., L.P.A.
        BY:  **DAVID C. LANDEVER,** Attorney at Law
        101 Prospect Avenue, West
        1600 Midland Building
        Cleveland, OH  44115


        WILLIAMS CUKER BEREZOFSKY, LLC
        BY:  **ALAN H. SKLARSKY,** Attorney at Law
        Woodland Falls Corporate Center
        210 Lake Drive East, Suite 101
        Cherry Hill, NJ  08002-1163


        YUHL & ATKINSON LLP
        BY:  **ERIC F. YUHL,** Attorney at Law  (CourtCall)
        4676 Admiralty Way, Suite 550
        Marina Del Rey, CA  90292


        ZIEF, DIMENT & GLICKMAN
        BY:  **JORDAN A. SUSSMAN,** Attorney at Law
        109 Geary Street, 4th Floor
        San Francisco, CA  94108


                    (APPEARANCES CONTINUED NEXT PAGE)

1              A P P E A R A N C E S (Continued)

2    For the Plaintiffs (continued):

3         ZIMMERMAN REED
          BY:  **RONALD S. GOLDSER,** Attorney at Law
4              **ELIZABETH PETERSON,** Attorney at Law  (CourtCall)
          1100 IDS Center
5         80 South 8th Street
          Minneapolis, MN  55402

6
                        ---o0o---
7

8

9

10   Also present:

11        **HON. CRYSTAL DIXON MITTELSTAEDT  (**CourtCall)
          Associate Judge
12        State of Maryland Circuit Court
          Prince George County, 7th Judicial Circuit
13        14735 Main Street
          Upper Marlboro, MD  20772
14

15

16                      ---o0o---

17

18

19                 (DEFENSE APPEARANCES NEXT PAGE)

20

21

22

23

24

25

26

27

28

1       <u>**D E F E N D A N T S '   A P P E A R A N C E S**</u>

2

3       For Defendants DePuy Orthopaedics, Inc.; DePuy, Inc.; Johnson &
        Johnson; Johnson & Johnson Services, Inc.; Yancey and
        Associates; SGF Medical, Inc.

4

5           TUCKER ELLIS & WEST LLP
            BY:  **ROBERT C. TUCKER,** Attorney at Law
            1150 Huntington Building
6           925 Euclid Avenue
            Cleveland, OH  44115

7

8           TUCKER ELLIS & WEST LLP
            BY:  **MICHAEL C. ZELLERS,** Attorney at Law
9           515 South Flower Street, 42nd Floor
            Los Angeles, CA  90071-2223

10

11          TUCKER ELLIS & WEST LLP
            BY:  **CORENA G. LARIMER,** Attorney at Law
12          135 Main Street, Suite 700
            San Francisco, CA  94105

13

14      For Defendants DePuy Orthopaedics, Inc.; DePuy, Inc.; Yancey and
        Associates; SGF Medical, Inc., Golden State Orthopaedics, Inc.,
15      and BTG Medical, Inc.:

16          DRINKER BIDDLE & REATH LLP
            BY:  **MICHELLE A. CHILDERS,** Attorney at Law
17               **NATHAN D. CARDOZO,** Attorney at Law
            50 Fremont Street, 20th Floor
18          San Francisco, CA  94105-2235

19          DRINKER BIDDLE & REATH LLP
            BY:  **SUSAN M. SHARKO,** Attorney at Law
20          500 Campus Drive
            Florham Park, NJ  07932-1047

21

22      For Defendant Lowell Nickel, M.D.:

23          MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP
            BY:  **ROBERT M. SLATTERY,** Attorney at Law
24          1211 Newell Avenue
            Walnut Creek, CA  94596-1288

25

26                      (APPEARANCES CONTINUED NEXT PAGE)

27

28

1                    <u>DEFENDANTS' APPEARANCES</u> (Continued)

2

For Defendant Thomas P. Schmalzried, M.D., a Professional
3   Corporation:

4        SEDGWICK, DETERT, MORAN & ARNOLD LLP
         BY:  **WENDY A. TUCKER,** Attorney at Law
5        801 South Figueroa Street, 19th Floor
         Los Angeles, CA  90017-5556
6

7   For Defendants Thomas Vail. M.D. and Vail Consulting, LLC:

8        SEDGWICK, DETERT, MORAN & ARNOLD LLP
         BY:  **MICHAEL F. HEALY,** Attorney at Law
9        One Market Plaza
         Steuart Tower, 8th Floor
10       San Francisco, CA  94105-1101

11

For Defendant Brian Ching, M.D.:
12

         WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
13       BY:  **DONALD A. LOUNSBURY,** Attorney at Law  (CourtCall)
         400 Capitol Mall, 22nd Floor
14       Sacramento, CA  95814

15

For Defendant Paul Nicholls, M.D.:
16

         OBRYAN, BROWN & TONER, PLLC
17       BY:  **BENJAMIN WEIGEL,** Attorney at Law  (CourtCall)
         1500 Starks Building
18       455 South 4th Street
         Louisville, KY  40202
19

20                           ---o0o---

21

22

23

24

25

26

27

28

P R O C E E D I N G S

Tuesday, July 26, 2011 - 1:55 p.m.

---o0o---

  (The following proceedings were held before **Judge Richard A.
Kramer** and **Judge David A. Katz** in Department 304 of the San
Francisco Superior Court, 400 McAllister Street, San Francisco,
California:)

  **THE CLERK:**  Calling the matter of DePuy ASR Hip System
Cases, JCCP 4649.

  Also calling the matter of In Re DePuy Orthopaedics
Incorporated ASR Hip Products Liability Litigation, Case Number
10 CU 2197.

  **JUDGE KRAMER:**  Welcome, everybody.  Thank you for all for
coming, I know, from near and far.  Appreciate that.

  This is a dual hearing.  It's in the federal MDL case as
well as the state case that I preside over.  We are not going to
clearly distinguish --

            (Interruption on CourtCall.)

  **JUDGE KRAMER:**  We're not going to clearly differentiate
between the cases.  I'm going to start off with some important
messages as well as some administrative matters, and then those
in the federal case, we'll deal with that, but we'll be
generating one transcript from all of this.

  Those of you who are on the phone and are using your speaker
phones, when you breathe, even slightly harder than normal, it
sounds like heavy breathing for reasons that we will not be able
to ascertain and it is distracting, so please pick up your
handsets and work that way.  We would appreciate it.  Thank you.

1    All right.  Let me start with a report that is ripped from

2    the headlines, as they say, on television, that is, that the

3    San Francisco Superior Court is in dire financial condition.

4    Those of you who are interested in this court have read about

5    this in the newspaper.

6        The genesis of this is that there was an unallocated, very

7    large budget cut applicable to the courts that was passed in the

8    budget that the Legislature passed and the Governor signed.

9    "Unallocated" means it was just $150 million without being

10   related to any specific activity or line item, and it was left

11   to the courts, as a recipient of budget money, to figure out

12   where the burden for this reduction falls.

13       In anticipation of what would be San Francisco's burden,

14   there was an announcement by our presiding judge a little over a

15   week ago to the effect that if San Francisco were to bear the

16   burden that one would expect, then the result would be

17   essentially to shut down our civil court system.

18       Would you like to get some water?

19       **MS. RELKIN:**  I have some, thank you.  I'm so sorry.

20       **JUDGE KRAMER:**  We're still getting some background noise on

21   the CourtCall, so if anybody can mute your phone, we would

22   appreciate that as well.  Don't forget to turn it back on if you

23   wish to speak.  Thank you.

24       In any event, the announcement by our presiding judge was

25   that the result would be all but three civil courtrooms would be

26   closed, and the three that would be open would be handling

27   unlawful detainers, five-year statutes -- and those of you from

28   elsewhere, that is a time within which cases have to be brought

1   to trial, five years from filing, but there are many exceptions

2   to that -- and preference cases, which would be statutorily

3   authorized preferences for trials, elderly people, sick people

4   and the like.

5        The impact would be essentially no civil cases except those

6   exceptions would go out to trial.

7        In addition, our law and motion departments, there are two

8   of them presently, would be combined into one, effectively

9   giving the surviving judge twice the work.  And then the judges

10  in the closed departments would be given various assignments.

11       Part of the plan was to terminate all of the court

12  commissioners.  The analogue in federal court is a magistrate

13  judge although the magistrate judges get more trial authority

14  than our commissioners.

15       But in any event, those functions are such things as traffic

16  court, special hearings in probate, special hearings in family

17  law and the like, and the judges whose civil departments would

18  be closed would fill those functions.

19       The remaining judges, and you can't fire judges under

20  California law because we are statutorily created officers, the

21  other judges would do something.

22       Most importantly, the two complex litigation departments

23  would be closed effective September 30, and all of the cases in

24  complex litigation departments would not be assigned elsewhere

25  but would simply go, as I metaphorically put it, in a large box.

26  To the extent anybody in the former complex litigation case

27  wanted to get a matter resolved, it would be without the ongoing

28  supervision that we have now, and it would be into law and

1  motion, which then would be much more burdened than I described

2  earlier.

3      That was the plan that was announced.  There was a meeting

4  last Friday whereby the State Judicial Council, a

5  constitutionally created body that is in charge of making the

6  ultimate decision on the allocations, determined what it was

7  going to do, and what it did was essentially what our presiding

8  judge anticipated when she gave the doomsday scenario that I've

9  described for you.

10      That is the present status of the matter.

11      All right.  So most importantly, what does that mean for

12  you?  Unless things change, then this case, along with all the

13  rest of my cases, and this case is a Judicial Council

14  coordinated proceeding even though there are many, many, many

15  individual cases, would in the usual course simply be no longer

16  a complex litigation case, and you would be as if you were a

17  regular case in the bullpen of all the cases here.

18      What I'm doing between now and September 30, besides -- I

19  can't say that I'm praying because the Church and State must be

20  separated here, but besides hoping for better than what I'm

21  describing for you, I believe it is my responsibility to take

22  every one of my cases and put each of them in a position so that

23  whatever happens with them there will be a battle plan, a way to

24  go forward.

25      As to the JCCP cases, that is, for those of you not

26  familiar, cases that are coordinated from different parts of the

27  state like what we have here, I have in mind, if it turns out

28  that nothing happens to ameliorate the situation, I have in mind

1  to discuss this directly with either the Judicial Council

2  administrator of such cases or, more likely, the head of the

3  Judicial Council, who is the Chief Justice of California, and to

4  request that the case be assigned elsewhere, a different county.

5      Those of you that participated in our festivities where we

6  talked about whether this case should be coordinated in

7  Los Angeles versus San Francisco will not be allowed to tell me

8  "I told you so," at least if you had suggested that Los Angeles

9  would be a proper place for this.

10     I had no idea that anything like this would happen at the

11  time we made the decision to have this in San Francisco.  As a

12  matter of fact, I still am having trouble grasping the

13  significance of all of this even though of course I recognize

14  that this is all what's going on.

15     But to the extent I can move a case, coordinated cases, or

16  something like that, to another place that has a complex

17  litigation department, and therefore a single assignment judge,

18  I will do that.

19     I'm going to do that later rather than sooner because I

20  don't want to start wheels rolling if it turns out we don't have

21  to do that.

22     Meanwhile, I want to put in place, as I said, mechanisms

23  that keeps things organized and allows things, if they're going

24  to be transferred, to be transferred in an organized fashion,

25  and have the litigants working pursuant to that organization so

26  that you'll not only make use of the time between now and when

27  it gets transferred, if it does, but you'll be able to go to the

28  new judge and say, well, here's what we're doing and it seems to

1   make sense, and perhaps if it's working well, then make it much

2   easier for a new judge to step in and replace me.

3       That's what's going on.  Does anybody have any questions?

4       **MR. KELLY:**  Your Honor, actually I don't have a question,

5   but I think before we presume that the Court's going to close,

6   it's worth telling you that I was at a meeting this morning with

7   Judge Feinstein along with some lawyers in this room who

8   represent these parties, as well as some other bar leaders, and

9   I am not convinced that the sky will fall on September 30.

10      I think not just in this courtroom, but in other courtrooms,

11  people would much rather have you keep this case, even the

12  people from Los Angeles who won't admit it, and I think we ought

13  to keep working towards the assumption that we're going to keep

14  this department open and get cases to trial here in California.

15      **JUDGE KRAMER:**  Did you say, "who won't admit it."  You meant

16  won't admit they're from Los Angeles, as opposed to --

17      **MR. KELLY:**  We know who they are.

18      **MR. O'CALLAHAN:**  Not me, I'm not.

19      **JUDGE KRAMER:**  We weren't looking at you.

20      I mean, you're right.  There are things that can happen.

21  There are conceptual as well as practical ways around this.

22  Nonetheless, I have to plan for the worst, and what that means

23  is I have to try to get you well organized, and if you're going

24  to be sent somewhere else, organized in a fashion that would

25  have a pretty good shot at continuing it.  Not where you'll all

26  say, gee, we sure miss Judge Kramer.  Wasn't that sad?

27      **MR. KELLY:**  Well, it would be sad, but we could also just

28  set all the cases for trial in the next 45 days before

1  September 30th.

2      **JUDGE KRAMER:**  You know, it's funny you should say that

3  because that's exactly what I'm going to do next.  That's the

4  good news.  The bad news is they're going to being in

5  Crescent City, the northernmost part of California just before

6  Oregon.

7      All right.  Any other comments or questions?

8      It's an unprecedented situation.  Creativity is welcome.  If

9  you can think of something or if you need more information from

10  me or the court system, feel free.  Any one of us whose been

11  involved with the court system, and for me it's for 40 years, is

12  just overwhelmingly shocked by this, but that's not helpful

13  emotion.  We have to be rational and plan.  So whatever it is

14  you think you can do, do it.  And that's about all I can say.

15      Questions?

16      Anything you want to say, for starters?

17      **JUDGE KATZ:**  Good luck.

18      **JUDGE KRAMER:**  All right.  What I have in mind is to go

19  through the case management conference orders that you have in

20  mind here, make sure they're finalized, sign whatever I can,

21  come up with a plan that is similar to other plans that all of

22  you who do these cases are used to, and all of you who have

23  appeared in this court and almost certainly in Judge Katz's

24  court have come to expect as a reasonable way of doing things.

25      I got to ask this:  Is that the great seal of the

26  United States on that cast?  Don't stand up.

27      **MS. SHARKO:**  No.  It is the seal of the U.S. Navy because my

28  oldest son received his wings as a Navy pilot last week and so

1    he put it on my cast.

2        **JUDGE KRAMER:**  Congratulations to you.

3                    (Applause.)

4        **JUDGE KRAMER:**  All right.  There was also a meeting of one

5    of your many committees during the lunch hour.  I did not have

6    the full benefit of what happened there so if we need to plug

7    anything in, I think what we ought to be thinking about is, from

8    my perspective, getting the orders in the JCCP case finalized or

9    figure out how to finalize them and then get them in place.

10       To the extent we can duplicate that in the MDL case or

11   modify it in a way that's helpful in the MDL case, then we

12   should do that.

13       Generically, here's what I think we need.  We need to know:

14       One, who is in charge, because all of you can't be in

15   charge.

16       Two, what is the responsibility of those who are in charge

17   and what is not the responsibility of those who are in charge?

18       Three, how do we start the flow of information going so that

19   case analysis and hopefully the invisible hand can show up

20   sooner rather than later and so that formal discovery does not

21   have to be used except as necessary, thereby saving lots of time

22   and lots of money.  This has to do with the exchange of

23   routinized information; fact sheets, as you people call them.

24       Next, to figure out how to do case-specific discovery that

25   would supplement the routinized exchange of information and may

26   or may not require formalized discovery.

27       And, next, is to figure out how to coordinate the activities

28   in the state court in California and the MDL proceeding.

1      That's not really a "next" in the sense of a sequencing.

2  That's something we should be thinking about at every stage.

3      And there was another one, and for the life of me, I can't

4  figure it out.

5      Oh, yeah, figure out how, if cases are going to go to trial.

6  I knew there was another one.

7      All right.  So anybody have another agenda item that you

8  want to stick on there, or comment on mine?

9      **MR. ZELLERS:**  No, Your Honor.  Michael Zellers.  We've gone

10  through a lot of these with you.  I know our colleagues from the

11  MDL have worked on those orders as well.

12      As of the last time, yes, that we were together, we do have

13  in place an appointment of counsel.  We've set out the

14  responsibilities of counsel in terms of the flow of information

15  in the MDL first, and then in California we've agreed to a

16  preliminary disclosure statement which starts the flow of

17  information.

18      Ms. Sharko, Mr. Kelly, and I guess Mr. London can report to

19  you on the status of our negotiation with the plaintiff fact

20  sheet and the defense fact sheet.  I think we've made

21  substantial progress with respect to those, and our vision is

22  that we have a common plaintiff fact sheet and defendant fact

23  sheet to be used in both the MDL and in the state court

24  litigations.

25      **JUDGE KRAMER:**  As I recall, on that point, last time we

26  discussed there might be some California specific issues that we

27  would put at the end of the fact sheet with a specification that

28  the following applies only to California.  Is that what you

1   ended up doing?

2       **MS. SHARKO:**  No, sir.  I am happy to report that we have

3   agreed on one form to be used in all three jurisdictions.  There

4   are three open issues that we're still meeting and conferring

5   on.  I think we need a little bit more time on those three

6   issues.

7       If we cannot resolve those issues forthwith, then I think

8   they are probably ripe for the judges to rule on them, and I

9   would expect that could happen real quickly.  I would like to

10  take one more pass at meeting with Mr. Kelly and Mr. London on

11  those three issues, but they are not California specific.

12  Everything California specific has been resolved.

13      **MR. KELLY:**  Michael Kelly for the plaintiffs in the

14  California action.  I'm not sure that's quite right.  There has

15  been uniform agreement on about 97 percent of the stuff in these

16  forms, but I'm not sure that on those particular questions where

17  there remains disagreement, that there is not a different result

18  that may obtain in California under California law than under

19  the federal law.

20      So ultimately I don't have any problem with a so-called

21  routinized form, but would not want to get a routine result just

22  for the sake of getting that on those three questions.

23      You know, I think we can pass to the end the question of how

24  we deal with those areas of disagreement.  I have had, by my

25  last count, nine long conversations with Ms. Sharko and

26  Mr. London, and if we want to try to hammer at it some more, we

27  can do that.  Only thing is, for the sake of uniformity, I'm not

28  prepared to say that we would ignore what the controlling law in

1   California would be.

2       **JUDGE KATZ:**  Well, I don't think it's the issue of

3   uniformity at all.  If you agree to disagree on issues which are

4   particularized to California, fine; then I am certain that the

5   judge sitting to my immediate right will resolve that.

6       If there are broader issues such as Ms. Sharko discussed in

7   our previous meeting in the MDL this morning, then if those

8   cannot be resolved, I have discussed those also with

9   Judge Kramer, and they will come before me and I will confer

10  with him.

11      We would, as judges generally do, prefer that the results of

12  meet and confer are uniformity as to your agreement on what is

13  to appear on those fact sheets.  Until the time you tell us that

14  there cannot be agreement on Item 1, 2 or 3, or whatever

15  combination, then it won't come to us.

16      When you tell us that, it will come to us.

17      **MR. KELLY:**  Yes, Your Honor.  These areas that Ms. Sharko

18  identified, I wasn't there, but although they may be broad

19  areas, those are the areas, and I'm suggesting that there well

20  may be a different decision based upon California law.

21      **JUDGE KATZ:**  I understand that.  I understand that.

22      **JUDGE KRAMER:**  Well, as to that, I suggest every plaintiffs'

23  counsel begin filling out the form minus the three questions so

24  that you're generating the facts as quickly as possible.

25      **MR. KELLY:**  And I would say we have uniform party agreement

26  on that.

27      **JUDGE KRAMER:**  Party agreement, okay.  You could even turn

28  it over with -- if we're having hearings on resolving the three

1  questions and you're ready to turn the information over, it

2  should happen as quickly as possible, and the facts regarding

3  each plaintiff situation, the common areas, should not be held

4  hostage on the other matters which, as I understand them, deal

5  with slightly different concepts.

6      **MR. KELLY:**  And, Your Honor, if the agreement was to kick

7  those on down the road six months and answer the rest of the

8  sheet, I think that's fine.

9      **JUDGE KRAMER:**  Not six months.

10     **MR. KELLY:**  Six hours.

11     **JUDGE KRAMER:**  Now you're talking.

12     **MR. KELLY:**  Somewhere in between.

13     **MS. SHARKO:**  I would suggest that you give us until the end

14  of the week to reach agreement on the three issues.  If we

15  cannot reach agreement by the end of the week, then on, say,

16  Tuesday or Wednesday, the defense will submit a brief on the

17  questions, and then plaintiffs can submit a brief in the time

18  they need, and then Your Honors can rule.

19     **JUDGE KATZ:**  I think, going through an agenda at this

20  juncture, I just told Judge Kramer, we'll probably address both

21  the MDL and California issues because the way we've done it in

22  the past is to have it presented, have input from MDL counsel,

23  and then input from -- in this case California counsel,

24  plaintiff or defendant, and put it on before the room.

25      Let's go with Item 1, which is a overview report on MDL

26  cases.  Mr. Tucker.

27     **MR. TUCKER:**  Bob Tucker.  Your Honors, so if I'm going to

28  give a report on the MDL.  I have to start with the very strong

1  admonition that Judge Katz gave to the plaintiffs' steering

2  committee, the plaintiff executive committee and defense counsel

3  at the very outset, which was that we were not supposed to waste

4  time.  That this was to be an MDL that was to get things done,

5  it was to be efficient, it was to be nimble, and we were to get

6  orders in place so that they were in place to get things moving

7  in the MDL, and they would be in place so that they could be

8  cooperatively passed along to the state court judges who had

9  cases.

10      And so what we have spent the last three or four months

11  doing is getting in place a protective order which is now in

12  place here in California as well, in a California-ized fashion;

13      Get in place a short form complaint procedure in the MDL to

14  permit people to file their complaints in the MDL;

15      To get in place an explant preservation order so that

16  patients who were having revision surgery that wanted their

17  explants to be examined by experts, whether on the plaintiff

18  side or the defense side, we had a consistent procedure that

19  would be in place for the explants to be evaluated and so that

20  people, when they were looking at the results of this testing,

21  wouldn't be criticizing the protocols being followed for the

22  explant revisions.

23      Now, Judge Kramer, Mr. Kelly and I have now agreed upon a

24  California styled preservation order which tracks along the MDL

25  preservation order with some -- a few differences consistent

26  with California law in terms of disclosure of information.

27      So that order is prepared for the Court, to be presented to

28  the Court for entry here in the JCCP.

1    Is that correct?

2    **MR. KELLY:**  Agreed.

3    **MR. TUCKER:**  So we've got that in place, and that's an

4    important -- a very, very important order because we've got --

5    we've got this evidence that is sitting in hospitals all over

6    the state of California, sitting in hospitals all over the

7    country, and they have to make their way from those hospital

8    pathology departments or surgical suites to the various places

9    that the plaintiffs' lawyers want them to go, and you can see

10   how many plaintiffs' lawyers there are here.  They all want them

11   to go someplace unique for them, for their clients, or to the

12   Orthopaedic Hospital at UCLA where DePuy has set up a retrieval

13   lab.

14       So this preservation order is in place and it's working.

15   There are issues that come up every day with lawyers in this

16   room, and we're working with people to make sure that anybody

17   that's having any difficulties are getting them resolved.

18       **JUDGE KRAMER:**  You say it's in place.  I haven't signed it

19   yet, right?

20       **MR. TUCKER:**  It's in place in the MDL and it has been agreed

21   to but not signed by the Court, by Your Honor.

22       **JUDGE KRAMER:**  Do you want to give it to me right now and

23   I'll sign it?

24       **JUDGE KATZ:**  I do want to elaborate just a tiny bit.  I've

25   learned over the last six years not to elaborate too much on

26   what Mr. Sharko or Mr. Tucker, or those sitting at the front

27   table on plaintiffs' side do because they usually cover the

28   waterfront.

1    But to show you about the intent that we've had in the MDL

2  and how we've addressed that intent of moving things along, I

3  got a call in December about accepting the assignment.  I

4  accepted it.

5    We interviewed roughly 100 people in January, and in

6  early -- relatively early, first half of February, had the first

7  meeting of MDL leadership, both plaintiffs and defendants.

8    Since then, these orders have been developed.  We've had a

9  meeting like this on June 1 with state court Judge Martinotti in

10  New Jersey.  And we intend, I intend, and Judge Kramer and I of

11  course have discussed this, talk about cooperation, not

12  necessarily coordination, because we are independent courts, but

13  cooperation.

14    And why I've stressed cooperation as a requirement for both

15  the plaintiffs' leadership of the MDL and defense counsel, and

16  since I have had experience with much of leadership in a prior

17  but still winding down MDL case involving the Ortho Evra birth

18  control patch, I was convinced that these folks would act in

19  that manner, and thus far, that has been the badge of this group

20  of your leadership.

21    I wanted to get that in front of you so you understand that

22  in less than six months these things have gotten rolling.  Now

23  that they're in place, you'll hear in a few moments about the

24  status of discovery and production and review.

25    Sorry.  Just I wanted to get that out.

26    **MR. TUCKER:**  So I encourage anybody who has patients who are

27  being revised and you're having any difficulties with the

28  hospitals or the administrative people at the hospitals with

1    respect to explants, just let us know and we can reach out and

2    try to help do that.

3         A lot of plaintiffs are choosing to have their clients'

4    explants sent to Orthopaedic Hospital, to DePuy, under the MDL

5    order, and that's fine.  We'll help facilitate that.

6         To the extent that you want to send it to your own expert or

7    storage facility, that's fine with us as well, as long as the

8    protocol that has been attached to the MDL Preservation Order

9    and now the -- it's the same protocol which has now been

10   appended to the JCCP Preservation Order is followed, and that's

11   basically that this is an inspect and test but no destructive

12   testing of the explants.

13        So that system seems to be working pretty well.

14        The other very important achievement or accomplishment in

15   the MDL is the ESI Production Format Order which was a predicate

16   to being able to produce our documents.  From the very first

17   time I stood up in the MDL, I said, we want to produce

18   documents.  We want to get the documents out.  We want to

19   produce them in the MDL, and we want to make sure that they're

20   made available in California, we want to make sure they're

21   available in New Jersey, we want to make sure that they're

22   available to counsel who have filed the cases.  We don't want to

23   be duplicating our production efforts.  We want to get the

24   documents out.

25        So there was a significant component in the MDL of the

26   negotiating team on the production format for the electronically

27   stored information.  California lawyers were very active in that

28   negotiation.

1    That order was entered in the MDL.  It has been -- I think

2    it has been entered here in California.  But I don't see it as

3    being entered here, but we are, Your Honor, committed to making

4    the documents that are produced in the MDL available and usable

5    here for counsel in California.

6        Now, in terms of where we are; so we have agreed upon the

7    production format.  We have now had three productions of

8    documents in the MDL.  Total of 2.5 million pages of documents

9    have been produced already.  1.7 million pages were produced, I

10   think last Thursday or Friday.  I'm told by a number of the

11   plaintiffs' lawyers they've already reviewed them all and so

12   they're waiting for our next group.  But every 30 days we are

13   going to produce around a million pages, little bit better than

14   that, with the expectation sometime this fall we will be through

15   this production.

16       We are in the course of completing another sweep of the

17   company.  We have produced the documents, all or some of the

18   documents for 85 custodians, and, again, the intent is to

19   produce them in the MDL and then make sure they're available for

20   the California lawyers so that there doesn't need to be

21   duplication on production.

22       **JUDGE KATZ:**  You should know, those of you who are

23   involved -- with both the MDL and California, that thus far

24   there are, as of this morning, 1424 cases which have been filed

25   in the MDL; 662 in California as of last Friday; 59 in

26   New Jersey.  The total number of state court cases across the

27   states of which we have become aware are 763.

28       You must put that in context of the number of these implants

1    over the past years, and so that 2200 represents a fraction of

2    the total, and that's why some things will need to develop as

3    the numerosity of cases becomes clear, the number that we --

4    that end line.

5        Steve?

6        **MR. SKIKOS:**  I've had nightmares about this moment.

7        We have had a long standing discussion over many mass torts

8    about the ability to cooperate between state and federal courts,

9    and as both Your Honors know, I've been before both of you for

10   awhile, and this litigation might be a very good example of how

11   state-federal cooperation can work, and we've already reached

12   agreements after listening, I think it was at Judge Kramer's

13   cookie lunch we had a list of -- I haven't described that yet --

14   a list of items that Judge Kramer wanted to address which are

15   similar in scope to what Your Honor, Judge Katz, wanted to

16   address.

17       So we worked to put together an agreement with the consent

18   of Mike Kelly, who is our lead in California, and with the MDL,

19   and I think there are certain things that we can say that are

20   hopefully very positive.

21       The first is that we recognize that both the MDL and

22   California are separate and independent jurisdictions, and I've

23   long asked for the jurisdiction paragraph to be placed in

24   Judge Kramer's orders, which we have here, which recognizes that

25   California is separate, we're independent, we have the right to

26   conduct our own discovery, and it's actually in CMO 1 here.

27       But we also recognize that we have an obligation to

28   communicate and cooperate on behalf of both the MDL and

1    California.  And so this litigation is marked by agreements that

2    might be useful in future litigations.

3         For example, the parties have agreed that the documents

4    produced in the MDL are deemed produced in California; that the

5    documents are not work product, the documents themselves, and

6    that all lawyers should have access to the documents that are

7    produced.

8         We have agreed that the documents produced in California

9    state court would be deemed produced in the MDL and that the

10   right to conduct discovery in both jurisdictions exists, which

11   has been disputed in other cases, but not this one.

12        We've agreed that the propounding of discovery and the right

13   to hear motions -- there have been cases in the past where some

14   have argued that one judge abdicates their jurisdiction to

15   another, and this case is one in which the parties very much

16   want communication and cooperation but recognize each other's,

17   that we have separate and independent jurisdictions.

18        And so I think in terms of the state-federal cooperation, we

19   have reached a point in mass torts that hopefully there's a good

20   balance.  And I want to add that after yesterday's cookie lunch,

21   the group of lawyers in San Francisco did go out and meet and

22   did come up with a plan, and thanks to Matt Davis, did set up

23   certain meetings to try to come up with creative solutions.

24        I would be remiss in not saying at this hearing that what I

25   said at the Reglan hearing, which is that we have had tremendous

26   success with this Court here in California and in other JCCPs in

27   planning this litigation without undue delay.

28        And we here in California have done -- especially here in

1  San Francisco, are really going to work hard to find a creative

2  solution to keep this.  It's taken us years to come up with this

3  model of state-federal cooperation and get rid of the word

4  coordination.  And now that we're here, we would like to stay

5  here.

6      **JUDGE KATZ:**  Mr. Kelly, do you have anything you wish to add

7  to Steve from the California perspective?

8      **MR. KELLY:**  You know, I just cannot follow Steve,

9  Your Honor.  Thank God he said it accurately.

10      **JUDGE KATZ:**  Okay.  A couple of things.

11      I don't know what the implications of the first may be, but

12  I've discovered, since coming on the bench a little while ago

13  with Judge Kramer, that both he and I are left-handed.  That may

14  have serious implications for you attorneys.

15      I will apologize in advance of being extremely far behind

16  Judge Kramer in the provision of goodies through cookies, cakes,

17  et cetera.  I'll try and catch up.

18      **JUDGE KRAMER:**  That being a left handed compliment.

19                          (Laughter.)

20      **JUDGE KATZ:**  And, Ellen, you had an overview on, either of

21  you, on Item Number 2?

22      **MS. SHARKO:**  Actually, I think Item Number 2, state court

23  report, was mine.

24      **JUDGE KATZ:**  Oh, that's you.  I'm sorry.

25      **MS. SHARKO:**  That's okay.  As you know, we have the

26  coordinated proceeding in New Jersey, New Jersey is still

27  working on the protective order, and we have our next New Jersey

28  conference with Judge Martinotti on August 8.  We expect that

1  there will be a coordinated proceeding in Illinois, and the

2  first case management conference will be at the end of the week.

3      We have individual cases or groups of cases in about a dozen

4  other state court jurisdictions.  Those state courts are running

5  behind California and MDL at this point, frankly.  As protective

6  orders are entered in those state court cases, we produce the

7  MDL and California documents in those cases, and we will

8  continue to do that.

9      In a couple cases in state court, we have begun to produce

10  distributor documents and we're working on a process to make all

11  of those distributor documents accessible and produced as part

12  of the routine with the MDL and California documents.  So the

13  MDL lawyers and the California lawyers and the New Jersey

14  lawyers, once they sign the protective order, will have access

15  to all of those distributor documents.

16      A couple of the state court lawyers wanted to move ahead

17  with depositions even though they did not have documents or

18  written discovery.  We have had a couple company -- one company

19  witness and two distributor depositions which have been taken.

20  We've given notice of those proceedings to the leadership in

21  California, New Jersey and the MDL.

22      As those depositions continue, we will continue to give

23  advance notice of the depositions to the leadership in the three

24  jurisdictions.  We have elected not to cross notice for the time

25  being because it's early in the litigation, but everybody should

26  work cooperatively there.

27      That's the state court report.

28      **JUDGE KATZ:**  I'd like to interject a couple things.

1    I have received telephone calls from a number of state court

2  judges over the past couple of weeks, some a little longer;

3  Maryland, Georgia, Illinois, Wisconsin, that come off the top of

4  my head.  And in each case, I've had my senior permanent

5  life-long, as a judge, law clerk, Cathy Garcia Feehan, who many

6  of you are acquainted with, e-mail or fax them copies of all

7  orders that we have issued in the MDL, and anything else which

8  we think may be of assistance to them in getting their arms

9  around what, in many instances, are still new cases before them.

10   And so that feeling of cooperation seems to be emanating

11  from both sides of the state-federal separation.

12   Anything further on state court matters from either defense

13  or plaintiff?

14   (No response.)

15   **JUDGE KATZ:**  Any additional input with regard to document

16  discovery and coordination?

17   Okay.  We've also already discussed on my agenda the PFS and

18  the DFS and the efforts which have and will be ongoing to

19  resolve the remaining issues with regard to finalizing those two

20  documents.  If they cannot be finalized, I would presume those

21  briefs will be forthcoming in the next days.

22   Case-specific discovery, which was already mentioned by

23  Judge Kramer.

24   Ms. Relkin.

25   **MS. RELKIN:**  Good afternoon.  Ellen Relkin from Weitz &

26  Luxenberg, for the plaintiffs in the MDL.

27   Since the scheme in the MDL, and until such time as there's

28  a bellwether selection, and we're not there yet, for sure, we

1  have certain clients, or heard from different lawyers, who have

2  medical issues.  Some may be terminal, clients or certain

3  witnesses.  This is the rarity, but there are certain isolated

4  instances where a client or their spouse or the surgeon is very

5  ill.

6      So we've set up a system, worked out with defendants, to

7  have a CMO which enables depositions of these in extremis

8  witnesses.  So it's a basic system of identifying, noticing up

9  the deposition; at first will be a discovery deposition followed

10  by a preservation deposition so that witness testimony is

11  preserved in the unfortunate event they pass away before there's

12  a trial or -- that their evidence is preserved for further

13  litigation.

14      So we'll present it to the Court.  Unfortunately, the copy I

15  have here which is printed out has the red lines.  We can e-mail

16  it to Your Honor for entering.

17      **JUDGE KATZ:**  That would be good.

18      **MS. RELKIN:**  I don't think it necessarily applies to

19  California.  It may.  Anyway --

20      **JUDGE KATZ:**  People live forever in California.

21      **JUDGE KRAMER:**  We certainly have the incentive for doing so.

22      **JUDGE KATZ:**  Do you have anything else on that, Bob?

23      **MR. TUCKER:**  No.

24      **JUDGE KATZ:**  Next, what remains on the agenda that we should

25  discuss at this juncture?  Ellen?

26      **MS. RELKIN:**  It kind of relates to the document discovery.

27  The MDL discovery committee had noticed some

28  30(b)(6) depositions so we've conferred with defendants and we

1   don't have the precise date, but in September we will have two

2   30(b)(6) depositions for the ESI witness designee and one for a

3   corporate organizational witness.  So we're working together to

4   get that date set.

5       **JUDGE KATZ:**  All right.

6       **MS. RELKIN:**  I assume it may be cross noticed.

7       **MR. TUCKER:**  Yes, we would intend that deposition to apply

8   both in the MDL and in California.  There's no reason to take

9   that deposition twice.

10      **JUDGE KATZ:**  I would think so.

11      Maybe it's time to interject why we, as judges, are so

12  concerned about cooperation.

13      These cases, particularly in the discovery and expert

14  witness portions of the cases, are extremely expensive to pursue

15  from both plaintiffs' and defendants' standpoint.

16      We are very cognizant of this, and the more that can be done

17  on a cooperative basis and the sharing that you've heard quite a

18  bit about over the last 45 minutes, the less expensive the

19  litigation becomes.

20      I have found that true, and I'm sure Judge Kramer has as

21  well, in handling previous mass tort issues or class action

22  issues, et cetera.  And so those are a part of the reason also,

23  from the timeliness standpoint, as both Mr. Skikos and

24  Mr. Tucker articulated.

25      Doing it in -- in a cooperative basis such as has been

26  outlined will, if not speed up, maybe quicken up the process and

27  get toward the end line of resolution in a more efficient,

28  effective, cost-effective manner.

1    Judge Kramer had raised an issue with me on the telephone

2  last week about science day, my perspective.  And I always

3  reserve the right to be wrong, except at home.

4    If science day presentations, presentation or presentations,

5  do in the course of events become necessary and appropriate, we

6  will do three things if that is held in the MDL:

7    One, we will, as we have in the past, video that process,

8  that science day presentation.

9    Two, we will provide state court judges who cannot attend in

10  person with a DVD -- is that the right term?

11    **JUDGE KRAMER:**  A round thing.

12    **JUDGE KATZ:**  We used to call them recordings, of that

13  hearing.

14    And, third, we will provide a transcript to those state

15  court judges who wish to have that transcript.

16    In discussing the matter this morning with the MDL

17  leadership, I indicated that it was my present intent to attempt

18  to arrange a central location for any such science day so as to

19  reduce the cost of attendance, travel, hotels -- and I know you

20  folks all eat at McDonald's when you're at these ventures --

21  reduce the cost for the individual attorney.

22    And we'll be down the road with that, but if anyone else

23  wishes to weigh in on that particular item, I welcome it at this

24  time.

25    Okay.  Other issues for -- Steve?

26    Go ahead.

27    **MR. KELLY:**  No, I was asking him something about the agenda.

28  I got it answered.

1    **JUDGE KATZ:**  Oh, okay.  And I didn't mean to be rude.  If it

2   was something that you wanted to present, let's go ahead and do

3   it.

4    **MR. KELLY:**  (Shakes head.)

5    **JUDGE KATZ:**  Okay.  Anything else for open discussion here

6   by the plaintiffs MDL leadership?

7    **MR. SKIKOS:**  Well, yes.

8    **JUDGE KATZ:**  Or California leadership?

9    **MR. SKIKOS:**  There's a couple more agreements that we

10   reached that are on --

11    **JUDGE KATZ:**  We like the use of the term "agreements."

12    **MR. SKIKOS:**  I really do.

13    **JUDGE KATZ:**  We like it.

14    **MR. SKIKOS:**  There was an agenda item relating to

15   dispositive motions that the parties have agreed is premature.

16   We also agreed, and I forgot how to phrase it so Mr. Tucker will

17   fix it, but we agree that the science day discussion will be

18   deferred as we continue to learn now about the patients revision

19   rates and recovery issues.

20    And then we have arranged a Greek chorus for -- inside

21   California joke -- with Mr. Robinson and Mr. Kelly to sing about

22   trial selection.

23    **JUDGE KATZ:**  When and where?

24    **MR. SKIKOS:**  That will be tonight at 5:00 o'clock.

25    But other than that, I think we have managed to come to as

26   many agreements as we can on those issues that Judge Kramer put

27   on his agenda and you had on yours.

28    **JUDGE KATZ:**  Very good.

1      Anything further?  Mr. Kelly, please.

2      **MR. KELLY:**  I'm a very cooperative guy, it's in my nature,

3  Your Honor.  And I just wanted to say if you should hear from

4  Ms. Sharko or Mr. Tucker that I'm not being understood, and that

5  that style is not being cooperative, I'm telling you in advance

6  that I was cooperative.

7      **JUDGE KATZ:**  Are you impugning the integrity of Ms. Sharko?

8      **MR. KELLY:**  I am not.  These are wonderful human beings and

9  I've told them that off the record.

10     So that's number one.  Number two, as a native-born

11 life-long, still residing in San Francisco San Franciscan,

12 welcome.

13     **JUDGE KATZ:**  Thank you.

14     **MR. KELLY:**  Having said that, I just wanted to make clear

15 that I think there are some things where we may get to forks in

16 the road where the California procedure and law doesn't apply,

17 and it's not out of any sense of not wanting to cooperate that

18 you find some resistance here.

19     We appreciate what has gone on in the MDL, and we like to

20 think that we may be able to do some things in California that

21 will be of assistance to you in Ohio in getting the federal

22 cases moving.

23     And then with respect to our JCCP today to Judge Kramer, we

24 had some things on the agenda, Your Honor, that dealt with

25 potential issues, including talking about case-specific

26 discovery and trial selection and whatnot, and I'm wondering,

27 since we have run late today, if it makes sense to set another

28 one of the JCCP hearings relatively soon -- I think most of the

1  lawyers in this courtroom are here for the MDL -- to talk about

2  those issues peculiar to California in the context of our

3  efforts, and not just our efforts, but the efforts of lawyers

4  statewide to avert this funding problem.

5      **JUDGE KRAMER:**  We are going to set another case management

6  conference.

7      **JUDGE KATZ:**  Mr. Kelly, I want to hasten to thank you for

8  what you just said with regard to this cooperation and

9  leadership, and that's why I'm here, because I think that it is

10  so important because, as in my past case, the California

11  component is very important because of the numerosity of state

12  cases in California in particular.

13      And so your and your compatriots of leadership and the

14  individual lawyers' input can be of significant benefit to the

15  MDL leadership and lawyers and to this judge.  And that's why

16  I'm here, and I thank you.

17      Anything that you want to respond to Mr. Kelly?

18      **MR. TUCKER:**  I can't compete with his graciousness,

19  Your Honor.  So, no, I have nothing further.

20      **JUDGE KATZ:**  Anything else from anybody involved in the MDL,

21  including any questions or input from counsel in attendance?

22  And, if so, please identify yourself for the court reporter.

23      **JUDGE KRAMER:**  All right.  Regarding Case Management Order

24  Number 5, I have two problems with it.

25      First, it refers to an Exhibit A, which is not attached to

26  the copy given to me.  I'll need that.  Don't come up yet.

27      Secondly, there's a mechanism whereby if there is a dispute

28  regarding getting any of the material from a hospital, that I am

1  to resolve it.

2      First, regarding the place where the hip gets taken out and

3  stored, throughout the order it's referred to the surgeon or the

4  hospital as being who you need help from.  In the section where

5  you talk about I have jurisdiction to resolve disputes, you only

6  refer to the hospital.  I would guess it could either be surgeon

7  or hospital so that should be consistent.

8      It appears in Paragraph F on Page 6.

9      Also -- go ahead.

10     **MR. TUCKER:**  Your Honor, what I'd like to propose is that we

11  resubmit this because Paragraph F is not -- or should not be in

12  this order so I think that addresses -- we're aware of the

13  Court's concern in Paragraph F.

14     **JUDGE KRAMER:**  The one I haven't stated yet?

15     **MR. TUCKER:**  Well, the concern you expressed about the Court

16  resolving the disputes.  And then the names of Mr. Kennedy --

17  this paragraph is in the MDL order, but it is not going to be in

18  the JCCP order.

19     **JUDGE KRAMER:**  All right.

20     **MR. TUCKER:**  So if you give us leave to take care of this

21  and then resubmit it to the Court.

22     **JUDGE KRAMER:**  All right.  Do you have in mind that if there

23  are disputes of any nature that somebody resolve it?

24     **MR. TUCKER:**  Yes.

25     **JUDGE KRAMER:**  Who?

26     **MR. TUCKER:**  Well, what we have seen happen so far in the

27  MDL is that many of the lawyers that have clients, if they have

28  a client that's being operated on at a hospital in someplace,

1  and they're having difficulty with that hospital, the lawyer is

2  contacted and then they know to contact the leadership, and the

3  leadership on plaintiffs' side or leadership on the defense side

4  is then able to resolve this dispute.

5      We have not had to take a single issue to Judge Katz to

6  resolve.  The lawyers have been able to resolve it with the

7  hospitals and the hospital lawyers.

8      **JUDGE KATZ:**  As far as it's gone, Judge, is I was asked if I

9  would accept a call from a lawyer for a hospital.  Once the

10  lawyer for the hospital is asked to call me, the dispute was

11  resolved.

12      **JUDGE KRAMER:**  All right.  Well, if that's the way you want

13  it, that's fine.  An alternative would be to make this Court

14  available if the parties wish to.  Otherwise you're going to

15  have to file a lawsuit because I would not have jurisdiction

16  over the hospital or a surgeon unless that person or entity is a

17  party.

18      So what you might do as an alternative, and what I was going

19  to suggest, is that you make it voluntary if the hospital or the

20  surgeon or anybody else involved wishes to come here and simply

21  have, assuming I'm still here, a motion practice or an informal

22  matter, that's great.  Otherwise, I can't order anybody to do

23  anything.

24      **MR. TUCKER:**  So what we have found so far, Judge, at least

25  in the MDL, is that the preservation order and the attached

26  protocol was distributed to hospitals and surgeons all over the

27  country.  And once the hospitals and the surgeons had that order

28  in hand, I think that most plaintiffs' lawyers, and I'm speaking

1  for people that may have had different experiences, but we've

2  been able to work through most of these explant issues with the

3  surgeons and hospitals.  With very few exceptions, have any

4  issues percolated up that we had to really talk through.

5  **JUDGE KRAMER:**  Do whatever you want.  I don't care.  Just

6  understand, I don't have procedural due process over a

7  third-party hospital, surgeon, anybody else.  So you can either

8  create it much like you do in a regular protective order where

9  the hospital would agree in advance, which isn't going to

10  happen; or, secondly, make it this Court available, if the

11  parties are willing to do so, and that's an economically

12  rational way of dealing with it.  Third, do nothing.

13  But I can't sign this with exhibit --

14  **MR. TUCKER:**  So --

15  **JUDGE KRAMER:**  Let me finish my sentence, please.

16  I can't sign this with Section F in there.  That's what I

17  was going to tell you.

18  **MR. TUCKER:**  Section F shouldn't be in there.

19  **JUDGE KRAMER:**  Well, then we're of like mind, but do

20  whatever you want.  Just make sure it works.

21  **MR. TUCKER:**  Okay.

22  **JUDGE KRAMER:**  Okay?

23  **MR. TUCKER:**  We'll get you a new copy of it, Judge.

24  **JUDGE KRAMER:**  Second thing I was going to add is if you

25  decide you are going to have a joint 30(b)(6) type deposition

26  and that the state litigation lawyers can participate, it is my

27  strong recommendation that you stipulate to have Judge Katz

28  resolve any discovery disputes resulting from that deposition

1  for two reasons:

2      One, you need somebody, and there's only two choices.

3      Second, he has broader jurisdiction than I do, say, over a

4  witness that I might not have jurisdiction over.

5      So my suggestion is you simply stipulate that any discovery

6  disputes, even those that are within the -- somebody's making a

7  lot of noise on your speakerphone.  Please stop doing that.

8  Thank you -- put that in your stipulation that Judge Katz is the

9  one who is to resolve those, and keep that in mind going

10  forward.

11      All right.  Let me pick a date for the case management

12  conference.  Off the record.

13                    (Off-the-record discussion.)

14      **JUDGE KRAMER:**  Back on the record.  Tuesday, August 29.  The

15  Gadolinium cases are here at 1:30.

16      Anybody not be able to make that, that is part of the JCCP

17  action that I have?

18      **MR. SEEGER:**  I cannot, I'm sorry.  I can being replaced. I'm

19  replaceable.

20      **MR. KELLY:**  Your Honor, is the day before available, the

21  28th?

22      **JUDGE KRAMER:**  I don't work on Sunday.

23      **MR. KELLY:**  Well, I just want to show that I do.

24      **JUDGE KRAMER:**  The answer is no.

25      **MR. KELLY:**  Well, then the preceding Friday?

26      **JUDGE KRAMER:**  No.

27      **MR. KELLY:**  Well, then let's do the 29th.

28      **JUDGE KRAMER:**  August 29 and come here at 2:00 o'clock.  I

1  might be able to finish Gadolinium earlier, all right?

2      Is there anybody that has anything else about anything?

3  We're about to adjourn.

4      **JUDGE KATZ:**  I wanted to congratulate Dan Robinson on his

5  recent engagement, and congratulate his parents, who now have,

6  you know, maybe see something in the future of some pleasure

7  from the expanding family.

8          (Whereupon, proceedings adjourned at 3:03 p.m.)

9                  ---o0o---

1   State of California                    )
                                           )
2   County of San Francisco                )

3

4                   REPORTER'S CERTIFICATE

5

6        I, Janet S. Pond, CSR No. 5292, Official Court Reporter for

7   the Superior Court of California, County of San Francisco, do

8   hereby certify:

9        That I was present at the time of the above proceedings;

10       That I took down in machine shorthand notes all proceedings

11  had and testimony given;

12       That I thereafter transcribed said shorthand notes with the

13  aid of a computer;

14       That the above and foregoing is a full, true, and correct

15  transcription of said shorthand notes, and a full, true and

16  correct transcript of all proceedings had and testimony taken;

17       That I am not a party to the action or related to a party

18  or counsel;

19       That I have no financial or other interest in the outcome

20  of the action.

21

22  Dated:  August 1, 2011

23

24                              *s/Janet S. Pond*
                          _____
25
                              Janet S. Pond, CSR No. 5292
26

27

28