**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| IN RE: DEPUY ORTHOPAEDICS, INC. ASR HIP IMPLANT PRODUCTS LIABILITY LITIGATION<br><br>--------------------------------------------<br>THIS DOCUMENT APPLIES TO: ALL CASES | ) MDL Docket No. 1:10-md-2197-DAK<br>)<br>) HONORABLE DAVID A. KATZ<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' EXECUTIVE AND STEERING COMMITTEES'
MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR ENTRY OF A COMMON BENEFIT ORDER**

**I.  INTRODUCTION**

In recognition of the resources and time necessary to advance plaintiffs' claims in this Multi-District Litigation (MDL), the Plaintiffs' Executive and Steering Committees (collectively herein referred to as the "PSC") move this Court to create a common benefit fund to compensate for fees and expenses for work performed for the benefit of all plaintiffs.

In December 2010, the Judicial Panel for Multi-District Litigation established the DePuy ASR MDL and transferred all pending federal cases to this Court for consolidated handling of pre-trial matters.  Approximately two thousand six hundred (2600) cases are currently pending in this MDL and approximately 20 cases are filed daily. To ensure an efficient administration of this MDL, the Court appointed a group of plaintiffs' attorneys as MDL leadership counsel in Case Management Order 3 dated January 26, 2011.[1]  The MDL leadership counsel have and will continue to devote substantial time and out-of-pocket costs on behalf of all plaintiffs.  To date, the

---

[1] The leadership group appointed by the Court includes Plaintiffs' Co-Lead Counsel and Liaison Counsel, Plaintiffs' State Liaison Counsel, Plaintiffs' Steering Committee, Plaintiffs' Executive Committee, Plaintiffs' Science Committee, Plaintiffs' Discovery Committee, and Plaintiffs' Law and Motions Committee.

1

plaintiffs' leadership have negotiated and developed a Short-Form Complaint, a Stipulated Explant Preservation Order and protocol, a Protective Order, Plaintiff and Defendant Fact Sheets, a Preliminary Disclosure Form, and a protocol for production of electronically-stored information. The leadership counsel, with assistance from other plaintiffs' counsel, are requesting, reviewing, analyzing and making available extensive document discovery.  Leadership counsel have retained the services of a sophisticated computer vendor who is hosting an electronic depository of the millions of pages of documents produced and has and will run additional analytics on said documents to expedite and increase the efficiency of document review.  Leadership counsel have retained world class experts in the fields of orthopedics, tribology, pathology, epidemiology, toxicology, cobalt and chromium toxicities, *inter alia* to advance the litigation.  Leadership counsel regularly appear before the Court at hearings and conferences, prepare and oppose motions, select and prepare experts, coordinate with other State Court litigation, and negotiate with defendants on all issues related to the litigation.  The leadership have already conducted two Rule 30(b)(6) corporate depostions and have three additional corporate depostions scheduled to take place in the next several weeks and are scheduling numerous depostions for the early winter.  In the coming months, the work of the plaintiffs' leadership will continue and significant time and resources will be devoted to advancing the claims of all plaintiffs towards trial or settlement.

    The PSC now seeks creation of two common benefit funds, the DePuy ASR Hip Implant Fee Fund ("ASR HIP Fee Fund") and the DePuy ASR Hip Expense Fund ("ASR HIP Expense Fund") that would reimburse attorneys for fees and expenses for work benefitting all plaintiffs. These funds will receive a percentage of recoveries in federal cases and a percentage of recoveries in participating state cases, as defined in the attached Proposed Order, and will disburse funds to compensate attorneys performing work and reimburse incurred costs that benefit all plaintiffs.

II.     ARGUMENT

    A.     **Common Benefit Funds Are Proper and Necessary in Complex MDLs.**

An MDL court's authority to establish a common benefit fund derives from its "managerial" power over consolidated litigation and from its inherent equitable powers. *See e.g., In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977). A trial court's managerial power is "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936). The appointment of leadership counsel and committees is necessary to effectively manage complex MDLs; federal courts have consistently recognized their inherent power to appoint counsel to coordinate and manage complex multi-party litigation and to require that those counsel be paid for their work. *See In re Linerboard Antitrust Litig*., 292 F. Supp. 2d 644, 653 (E.D. Pa. 2003) ("A necessary corollary to court appointment of lead and liaison counsel and appropriate management committees is the power to assure that these attorneys receive reasonable compensation for their work."); *see also Everglades,* 549 F.2d at 1012; *In re Zyprexa Prods. Liab. Litig*., 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006); *In re Vioxx Prods. Liab. Litig*., 2011 U.S. Dist. LEXIS 92706, *37-38 (E.D. La. Aug. 9, 2011).

While the court's managerial power provides a basis for the Court to assure fair compensation to leadership counsel, the equitable common benefit doctrine is concerned with unjust enrichment. Since *Trustees v. Greenough*, 105 U. S. 527 (1881), the Supreme Court has "recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are

3

unjustly enriched at the successful litigant's expense." *Id.* "The award of fees under the equitable fund doctrine is analogous to an action in quantum meruit: the individual seeking compensation has, by his actions, benefited another and seeks payment for the value of the service performed." *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 165 (3d Cir. 1973). Put another way, "the doctrine is designed to spread litigation costs proportionately among all beneficiaries so that the active beneficiary does not bear the burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves." *Vincent v. Hughes Air West,* 557 F.2d 759, 769 (9th Cir. 1977).

Application of the common fund doctrine is not limited to class actions; the common fund doctrine is a longstanding principle of equity that predates modern class actions and may be applied in any case where a party has expended resources to secure a common benefit. *Sprague v. Ticonic Nat'l Bank,* 307 U.S. 161, 167 (1939) ("But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation -- the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree -- hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation."); *Greenough*, 105 U.S. at 534-36 (applying doctrine prior to advent of modern class actions).

Use of the common fund doctrine to compensate attorneys who toil for the common good of all plaintiffs is necessary for MDLs to be an effective means for the timely and economic resolution of cases. Management of complex MDLs would be impossible without court-appointed counsel. If court-appointed counsel "are to be an effective tool, the court must have the means at its disposal to order appropriate compensation for them. The court's power is illusory if it is dependent upon [court-appointed] counsel's performing the duties desired of them for no additional

4

compensation." *Everglades,* 549 F.2d at 1012.  Thus, in mass tort cases involving consolidated MDL proceedings, it is standard procedure to order that a percentage of all recoveries be contributed to a fund to compensate attorneys who provide work for the common benefit of all plaintiffs. Manual for Complex Litigation (Fourth) Section 20.312 ("MDL judges generally issues orders directing that defendants who settle MDL-related cases contribute a fixed percentage of the settlement to a general fund to pay national counsel.").

The First Circuit has articulated these principles as follows:

> Under standard American rule practice, each litigant pays his or her own attorneys' fees.  Yet, there are times when the rule must give way.  For example, when a court consolidates a large number of cases, stony adherence to the American rule invites a serious free-rider problem.  If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals.
>
> A court supervising mass disaster litigation may intervene to prevent or minimize an incipient free-rider problem and to that end, may employ measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs. Such courts will most often address the problem by specially compensating those who work for the collective good, chiefly through invocation of the so-called common fund doctrine.
>
> \* \* \*
>
> Here, [the District Court's] decision to use a steering committee [to manage consolidated mass tort litigation on behalf of all plaintiffs] created an occasion for departure from the American rule. In apparent recognition of the free-rider problem, the judge served notice from the beginning that he would eventually make what he, relying in part one appellees' counsel, later termed a "common fund fee award" to remunerate PSC members for their efforts on behalf of communal interests. This was a proper exercise of judicial power.

*In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606-07 (1st Cir. 1992) (citations and quotations omitted).

5

In order to protect the right of all attorneys working for the common benefit to receive a fee from the proceeds of the litigation, courts have consistently ruled that it is appropriate to direct that a portion of recoveries be deposited into an escrow account for allocation by the court. *See e.g.*, *In re: Chantix (Varenicline) Prod. Liabl. Litig.*, MDL 2092, Case Mgmt. Order No. 7 (N.D. Ala. June 2, 2010) (assessing 6% or 8% of each case's gross monetary recovery for common benefit funds, depending on date of agreed participation); *In re: Yasmin and Yaz (Drospirenone) Mktg, Sales Practices and Relevant Prod. Liab. Litig.*, MDL 2100, Case Mgmt. Order No. 14 (S.D. Ill. March 25, 2010) (assessing 6% or 10% of recovery, depending on date of agreed participation); *In re Fosamax Prod. Liab. Litig.,* MDL 1798, Case Mgmt. Order No. 15 (S.D.N.Y. Jan. 5, 2010) (assessing 6%, 8%, or 9% of recovery, depending on date of agreed participation); *In re Kugel Mesh Hernia Patch Prod, Liab. Litig.,* MDL 1842, Order No. 22 (D.R.I. Nov. 20, 2009) (assessing 12% of recovery); *In re Ortho Evra Prod. Liab. Litig.,* MDL 1742, CMO 9 (N.D. Ohio Aug, 28, 2006) (assessing 3%, 5% of recovery depending on date of agreed participation) and thereafter, Third Amended Case Mgmt. Order 9 (N.D. Ohio July 23, 2009) (assessing 6% or 8% of recovery, depending on date of agreed participation for cases involving post-label change dates); *In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 457 (E.D. Pa. 2008) (assessing 9% of recovery); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, Pretrial Order No. 402 (E.D. Pa. June 17, 1996) (assessing 17% of recovery).

As proposed, the common benefit assessment Order applies to any cases in which Participating Counsel have a fee interest. Participating Counsel is defined in the order and include any lawyer and their law firm with a case on file in the MDL now or in the future or any other lawyer who signs the Participation Agreement or utilizes the work product of the MDL as later defined. It is appropriate for the assessment to be imposed on all federal cases, as those cases

6

directly benefit from the common-benefit work of PSC and other attorneys. *In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006) ("A transferee court in a federal multidistrict litigation has the power to determine the compensation for appointed lead counsel and to impose its fee calculation on all federal plaintiffs, even if their cases are 1) before other federal courts rather than the transferee court, or 2) not yet in a federal court, but ultimately are in such a court."). It is also appropriate for the assessment to be imposed on coordinating state cases; as a matter of equity, state court plaintiffs and their attorneys should be assessed to the extent that they benefit from much of the work performed by the PSC and other common benefit attorneys. As noted by the *Zyprexa* MDL Court, requiring state plaintiffs' attorneys to pay their proportionate share of the time and costs incurred by the PSC for the benefit of all plaintiffs

> would avoid the troubling potential for attorney conflict of interests that otherwise would exist: Attorneys face distorted incentives to file cases in state courts without respect for the best interests of their clients because attorneys can use [the PSC's] work without paying for it out of their fees when in state court, but would have to pay their fair share if they were in federal court.

*Zyprexa*, 467 F. Supp. 2d at 269; *see also, e.g., In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, Pretrial Order No. 67 (S.D.N.Y. March 20, 2002) (assessing 6% of recovery for federal cases and 4% for coordinating state cases); *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355, Pretrial Order No. 16 (E.D. La. Dec. 26, 2001) (assessing 6% of recovery for federal cases and 4% for coordinating state cases). Thus, as a matter of equity, a state court attorney who benefits from the work of the common benefit attorneys should contribute his or her proportionate share into the common benefit fund. In this litigation, equity is accomplished by the voluntary agreement of state court attorneys to participate in the assessment system (via the Participation Agreement attached to the proposed Order) and by the applicability of the assessment to all cases in which Participating Counsel have a fee interest.

7

## B. This Court Should Enter the PSC's Proposed Order Establishing Common Benefit Funds in This MDL.

The PSC respectfully requests this Court enter the attached Proposed Order (attached as Exhibit A) assessing a portion of the fees recovered in each individual action in this MDL and in each state case with Participating Counsel for the common benefit, funds which will be withheld for distribution to counsel acting for the benefit of all plaintiffs.

While it is not yet possible to ascertain the precise percentage of plaintiffs' eventual recoveries that will adequately cover, yet not over-compensate, the time and costs to be incurred for the benefit of call plaintiffs, a number of considerations have informed the PSC's request. Ultimately, the amount of the fee to be awarded must be determined either under the lodestar approach or under the percentage-of-the-fund approach, based upon a judicial assessment of the amount and quality of work performed by the common benefit lawyers in relation to the size of the recoveries that have been generated. *See, e.g., In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 300, 304-07 (1st Cir. 1995); *In re Washington Pub. Pwr. Supply Sys. Securities Litig.*, 19 F.3d 1291, 1295 (9th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Because this action is still ongoing, it is impossible to ascertain the total amount of resources that will ultimately be expended for the common benefit; it is likewise impossible to ascertain the total amount that plaintiffs will recover as a result of such common benefit expenditures. Based on common benefit rulings in previous mass tort litigations of similar size and nature (cited herein), the PSC's collective experience in previous mass tort litigation, and the PSC's knowledge of the complexity of this particular litigation, the PSC unanimously recommends that the appropriate hold-back for this litigation is: (a) 4% of the gross monetary recovery (3% for fees and 1% for costs) for counsel who do not elect Late Participation, as those terms are defined in the attached Proposed Order; and (b) 6% of the

8

gross monetary recovery for counsel who elect Late Participation, as those terms are defined in the attached Proposed Order.

The assessment is only intended to preserve a *res* until an appropriate time arrives when this Court can make a determination of any appropriate award of either fees or costs for common benefit work. To assure that the *res* is preserved, the responsibility for paying the assessment into the fund established is on the Defendants; they alone will have the intimate knowledge of sometimes confidential settlements and initial access to the funds themselves. This practice is common in mass tort litigation of this nature and has worked well in other MDLs. *See e.g., Rezulin*, MDL 1348, Pretrial Order No. 67 (S.D.N.Y. March 20, 2002) ("Before making any Claim Payment, each paying defendant shall deduct therefrom and pay to the Clerk for deposit to the CRIS Account the Escrow Amount."); *see also In re: Gadolinium Based contrast Agents Prod. Liab. Lit.,* MDL No.1909, Pretrial Order #2 ¶ II.B.3 (E.D. Ohio March 4, 2010).

For all counsel, distribution of any funds withheld will be pursuant to a subsequent order by this Court in accordance with applicable principles of law governing fee awards. It is anticipated that in support of any award of fees and costs, a motion will be made in the format and with appropriate documentation as this Court directs. Furthermore, at the appropriate time, the PSC requests this Court appoint a Fee Committee to make recommendations to the Court about any award of fees and expenses.

### III. CONCLUSION

For the foregoing reasons, the PSC requests that the Court grant its Motion and enter the attached Proposed Order.

Dated: November 7, 2011

        Respectfully submitted,

        **PLAINTIFFS' EXECUTIVE
         & STEERING COMMITTEES,**

        *Plaintiffs' Liaison Counsel:*

By:    /s/ Michelle L. Kranz
        Michelle L. Kranz (0062479)
        ZOLL, KRANZ & BORGESS, LLC
        6620 W. Central Ave., Ste. 100
        Toledo, OH 43617
        Tel: (419) 841-9623
        Email: michelle@toledolaw.com

        *Co-Lead Plaintiffs' Counsel:*

        Ellen Relkin
        WEITZ & LUXENBERG, P.C.
        700 Broadway
        New York, New York 10003
        (212) 558-5715
        ERelkin@weitzlux.com

        Steven J. Skikos
        SKIKOS CRAWFORD SKIKOS & JOSEPH
        625 Market Street, 11th Floor
        San Francisco, CA 94105-3302
        (888) 813-2934
        sskikos@skikoscrawford.com

        *Law & Motions Committee:*

        Kate E. Jaycox
        Tara Sutton
        ROBINS, KAPLAN MILLER & CIRESI, LLP
        1800 LaSalle Avenue, 2800 LaSalle Plaza
        Minneapolis, MN 554021
        (612) 349-8500
        tdsutton@rkmc.com